SHARP, Chief Judge.
Evans appeals from a judgment convict *1316 ing her of carrying a concealed firearm[1] after entering a no contest plea. She reserved her right to appeal the trial court’s denial of her motion to suppress evidence of the weapon, prior to entering her plea. Granting the motion to suppress would have been dispositive.[2] Because we think the trial court erred in not suppressing the evidence, we reverse.
The record established that in the early morning hours of Christmas day, 1987, Evans attempted to gain entry into her apartment at the Georgetown Apartments on Silver Star Road, in Orlando, Florida. She could open the doors with her key, but the doors were chained from the inside. She attempted to awaken her child and baby-sitter (her brother) who were asleep in the apartment.
An anonymous caller observed the ruckus and telephoned the police that a burglary was in progress. Evans was correctly described as a female dressed “all in yellow.” When the police officers arrived, they saw Evans out in front of the apartment, standing by the windows. A screen had been broken in one of them.
The circumstances initially looked bad for Evans. However, she explained to the police officers that she lived in the apartment and that she had been locked out of it by her boyfriend. The police also tried to open the doors with her key, but found them chained. They yelled “enough to wake the entire complex” and banged on the doors. No response came from inside. There was no telephone, so they could not ring the persons inside.
In order to complete their investigation, and assure themselves that Evans was not a burglar, they asked her for identification showing she lived there. She obviously had keys to the apartment. Evans said she had identification in her purse which was in her car.
They went outside to the car. A man identified by the police as a security guard came by. He told the police he thought Evans lived in the complex, but he would go check on it. He did not reappear.
Evans fumbled through her purse trying to find her license. She put the purse on the top of the car. One of the policemen asked her if he could look inside the purse. She said: “Sure, go ahead.” He found a paper bag inside the purse, which contained a .25 automatic. He then arrested Evans. Later, identification was found in the purse showing Evans lived at that apartment in the complex.
When asked why the officer asked Evans for permission to search her purse, he said she appeared to him to be “unsteady.” He thought her being at the apartment was “suspicious”; and he was still detaining her as a burglary suspect. When asked what more was left to be checked out, he theorized that Evans might have crawled out of the apartment through the window, having done harm to persons inside, taken the keys, and chained the doors from the inside.
Although this is a close case, we think it is controlled by Tennyson v. State, 469 So.2d 133 (Fla. 5th DCA 1985). The question is whether Evans was being lawfully or unlawfully detained as a burglary suspect at the time she gave her consent[3] to search her purse. If she was being detained after the time a reasonable suspicion or investigation had lapsed, then the consent was involuntary and the search was thereafter illegal. Norman v. State, 379 So.2d 643 (Fla.1980); Tennyson at 135.
Here, the police officers had exhausted their investigation of Evans as a burglar. She was identified by the security guard; and she had keys to the apartment. The idea that Evans, dressed in all yellow, had crawled in and out of the windows and done harm in the apartment after chaining the doors from the inside, is so unlikely that it cannot constitute a reasonable suspicion on which the police officers could continue to lawfully detain Evans. See, e.g., Florida v. Royer, 460 U.S. 491, 103 S.Ct. *1317 1319, 75 L.Ed.2d 229 (1983) (investigative detention must be temporary and last no longer than is necessary to effectuate purpose of stop).
Additionally, there was no evidence to buttress this theory. No windows were broken or open wide enough to accommodate Evans’ passage. She was not disheveled from her exertions, as a person dressed all in yellow would be had she climbed in and out of a window.
Accordingly, the trial court’s order denying the motion to suppress is reversed and the cause is remanded with instructions to enter an order granting the motion, and discharging Evans.
REVERSED and REMANDED.
DAUKSCH and GOSHORN, JJ., concur.

. & 790.01, Fla.Stat. (1987).

. Brown v. State, 376 So.2d 382 (Fla.1979); State v. Ashby, 245 So.2d 225 (Fla.1971).

.Evans denied she gave consent for the search, but a police officer testified to the contrary.