592 So.2d 733 (1992)
Jason A. THAMES, Appellant,
v.
STATE of Florida, Appellee.
No. 90-2608.
District Court of Appeal of Florida, First District.
January 2, 1992.
*734 Nancy A. Daniels, Public Defender, and Lynn A. Williams, Asst. Public Defender, Tallahassee, for appellant.
Robert A. Butterworth, Atty. Gen. and Charles T. Faircloth, Jr., Asst. Atty. Gen., Tallahassee, for appellee.
JOANOS, Chief Judge.
Appellant pled nolo contendere to charges of carrying a concealed firearm and possession of less than twenty grams of cannabis, with express reservation of his right to appeal the denial of his motion to suppress. We affirm.
Appellant's arrest and subsequent plea arose in the context of a suspected trespass. Testifying at the suppression hearing were appellant, the woman who reported a perceived trespass, and the three investigating officers. Appellant's testimony reflects that at noon on December 1, 1989, appellant went to a trailer which he thought to be the residence of an acquaintance he had not seen in five years. Appellant said that since he did not recognize the car in the driveway, he went to two neighboring homes to inquire if his acquaintance still lived there. Appellant then approached the front door of the trailer and knocked. There was no answer, but appellant assumed someone was inside because he could hear the television. He went to the back door and knocked; when no one came to the door, he left and walked down White Oak Drive toward his house. Appellant stated he went to the trailer intending to ask his former acquaintance for a job with the construction company owned and operated by the acquaintance's father.
The woman who resided in the trailer confirmed that her husband worked in his father's construction business. She observed appellant approach her residence, but did not answer the door because she did not know him. The woman called the sheriff's office, and reported that she thought someone was attempting to break into her house.
Officer McCarthy was dispatched to the scene by the sheriff's department. When he arrived, he first spoke with a neighbor of the complainant. The neighbor advised that a young man wearing a red jacket and blue jeans had knocked on her door. He left her yard, and walked toward the trailer residence of the complainant. As Officer McCarthy left the neighbor interview, he saw a man (appellant) matching the description given by the neighbor. Appellant was then approximately one-half mile from the complainant's trailer, and was walking in a direction away from the complainant's home.
According to appellant, Officer McCarthy got out of an unmarked car, pulled his gun, and told appellant to stop. Two other officers approached in another vehicle, and joined Officer McCarthy and appellant. The officers asked appellant where he had *735 been, and asked if would go downtown with them. Appellant stated he had been to see his acquaintance, and asked the officers if he could answer their questions there and then go home. Officer McCarthy advised appellant that he would have to go with the officers to the sheriff's office, and they would have to search him before putting him in the police vehicle. In the course of a frisk, Officer Bridges found an unloaded handgun stuck in appellant's waistband. At that point, appellant was arrested.
The officers' version of the events leading to appellant's arrest differs in some respects from appellant's account. Officer McCarthy said he pulled up beside appellant in his unmarked vehicle and asked appellant if he could talk with him, to which appellant responded, "Sure." The officer said he did not pull his weapon at that time. He further stated that when asked to go to the police station, appellant agreed, saying he would do anything to clear up the problem. Officer McCarthy said that although he never informed appellant that he was free to leave, appellant was in fact free to leave at any time during the initial encounter.
Officer Bridges said that the encounter between appellant and Officer McCarthy appeared to be consensual. She described appellant as nonchalant about going to the police station. When the officer asked appellant whether he had any weapons, he produced a pocket knife. The officer then advised that appellant would have to be searched before getting into her vehicle. In the check of appellant's person for weapons, she discovered the gun tucked inside the waistband of his jeans. Officer Bridges signalled the other officers and appellant was placed under arrest. During the subsequent search of appellant's person, a small amount of marijuana was discovered.
Officer Poole testified that appellant was cooperative when asked if he would go to the sheriff's office. However, all three officers acknowledged that appellant was never advised that he could refuse to talk with them, or that he could refuse to accompany them. Rather, Officer Poole testified unequivocally that appellant was not free to leave at any time. In addition, the officers all acknowledged that appellant stated he wanted to talk with them there and then go home, and that he did not think the officers could require him to go to the station.
The trial court found that a consensual encounter preceded the detention, appellant agreed to accompany the officers to the sheriff's office, and at that point, the officers were authorized to determine whether appellant was armed. The trial court further ruled that discovery of the firearm and appellant's resulting arrest authorized the subsequent search. On these findings, the motion to suppress was denied.
A temporary detention or investigatory stop may be based solely on a suspected trespass. State v. Dilyerd, 467 So.2d 301 (Fla. 1985); State v. Pye, 551 So.2d 1237, 1239 (Fla. 1st DCA 1989). Where an investigatory stop is untainted by official impropriety, the state need only show consent by a preponderance of the evidence. Denehy v. State, 400 So.2d 1216, 1217 (Fla. 1980); Freeman v. State, 559 So.2d 295, 297 (Fla. 1st DCA 1990). The voluntariness of a consent is a question of fact to be determined from the totality of the circumstances. Denehy v. State, 400 So.2d at 1217. An otherwise voluntary encounter is not rendered involuntary because a request is made by a uniformed police officer. In other words, an encounter does not become non-consensual merely because a police officer makes the request. State v. Davis, 543 So.2d 375, 376 (Fla. 1st DCA 1989).
The initial stop in this case was predicated on a report of a suspected trespass and break-in at a trailer residence, and thus was proper under Dilyerd and Pye. Moreover, the record reflects that this initial stop was consensual. The dispute pertains to whether appellant consented to accompany the officers to the sheriff's office, or whether his conduct constituted a mere submission to authority. As the trier of fact, it was the trial court's prerogative to determine this question, Wade v. State, 589 So.2d 322 (Fla. 1st DCA 1991), and the *736 court's resolution of such matters should not be disturbed on appeal unless clearly erroneous. Jordan v. State, 384 So.2d 277, 279 (Fla. 4th DCA 1980). Upon application of the foregoing principles, together with the presumption of correctness due a trial court's ruling on a motion to suppress, Medina v. State, 466 So.2d 1046, 1049 (Fla. 1985); State v. Pye, 551 So.2d 1237 (Fla. 1st DCA 1989), we conclude the trial court could find that appellant consented to accompany officers to the sheriff's office.[1] In view of that consent, the check of appellant's person for weapons was authorized, because undertaken to insure the officers' safety. The discovery of the gun on appellant's person gave rise to a lawful arrest, and the search incident to that lawful arrest yielded admissible evidence. See, generally, Jacobson v. State, 476 So.2d 1282, 1285 (Fla. 1985).
Accordingly, the trial court's denial of the motion to suppress is affirmed.
MINER, J., concurs.
SHIVERS, J., dissents with opinion.
SHIVERS, Judge, dissenting.
I respectfully dissent. Once the purpose of a temporary detention has been effected, and no probable cause to arrest has been shown, the suspect is entitled to immediate release. See § 901.151(3), Fla. Stat. (1989); Florida v. Royer, 460 U.S. 491, 103 S.Ct. 1319, 75 L.Ed.2d 229 (1983); Evans v. State, 543 So.2d 1315, 1316-1317 (Fla. 5th DCA 1989); Tennyson v. State, 469 So.2d 133, 135 (Fla. 5th DCA 1985). See also State v. Rizo, 463 So.2d 1165, 1167 (Fla. 3d DCA 1984). In other words, a continued detention after the purpose of the initial detention has been realized, is presumptively tainted by the illegal stop. Tennyson, 469 So.2d at 135. Similarly, a consent to search must be freely and voluntarily given  mere acquiescence to apparent authority will not validate a warrantless search. Norman v. State, 379 So.2d 643 (Fla. 1980); Rosell v. State, 433 So.2d 1260, 1262 (Fla. 1st DCA 1983) review denied, 446 So.2d 100 (Fla. 1984); Castillo v. State, 536 So.2d 1134, 1137 (Fla. 2d DCA 1988); Tennyson, 469 So.2d at 136.
While I agree the initial detention in this case was proper under Dilyerd and Pye, because predicated on a report of a suspected trespass and attempted break-in, once the officers ascertained appellant's identity, and he provided a reasonable and unrefuted explanation for going to the complainant's residence, and there appeared no other probable cause to arrest, appellant was entitled to release. Section 901.151(3) and (4), Fla. Stat. (1989). The officers' insistence that appellant accompany them to the police station contravened the express provisions of section 901.151(3), Florida Statutes. Moreover, the record reflects that appellant asked officers to talk with him at the scene of the detention, so that he then could go home. All three officers acknowledged that appellant was of the view that they were not authorized to require him to accompany them to the police station. Moreover, all three officers acknowledged that appellant was not told he could refuse.
Notwithstanding the deference due the rulings of a trial court on a motion to suppress, Young v. State, 579 So.2d 721, 723 (Fla. 1991); State v. Pye, 551 So.2d 1237, 1239 (Fla. 1st DCA 1989), the trial court's finding that appellant consented to an extension of the investigatory stop is without support in the record, and constitutes an improper application of section 901.151. Moreover, in my view, the Supreme Court's recent opinion, California v. *737 Hodari D., does not require a different result. The officers candidly testified that (1) appellant was not told he could refuse to accompany them, (2) appellant told them he did not wish to accompany them, and (3) appellant expressed the view that the officers were not authorized to require him to accompany them. This evidence, as perceived by a reasonable person, would warrant that person's belief that his movement was restricted by the officers' words and conduct. See California v. Hodari D., 111 S.Ct. at 1551. I conclude the frisk which resulted in appellant's arrest for carrying a concealed firearm occurred in the context of an unconstitutional stop, i.e., a continued detention which went beyond the limited section 901.151 exception to the warrant requirement. I would reverse the denial of the motion to suppress.
NOTES
[1] The test for seizure of the person for fourth amendment purposes, was set forth in United States v. Mendenhall, 446 U.S. 544, 554, 100 S.Ct. 1870, 1877, 64 L.Ed.2d 497 (1980), and was reaffirmed in California v. Hodari D., ___ U.S. ___, 111 S.Ct. 1547, 113 L.Ed.2d 690 (1991) as follows: "Mendenhall establishes that the test for existence of a `show of authority' is an objective one: not whether the citizen perceived that he was being ordered to restrict his movement, but whether the officer's words and actions would have conveyed that to a reasonable person." Here, the trial court accepted the officer's version relating to the voluntariness of appellant's consent to go to the sheriff's office, which, as trier of fact, the court was entitled to do. Under the officers' account of events, a reasonable person would not have considered his movement restricted.