HARRIS, Chief Judge.
The police, who had the motel room of Antwon Green under surveillance for sus *979 pected drug activity, observed S.L.R. enter the room at around 11:00 p.m. and leave about one minute later. She was approached in the parking lot as she was leaving by two agents who identified themselves as narcotics officers, one of whom asked if he could ask her a few questions. She agreed. ■
The arresting officer testified that the following then took place:
I told her at that point we were conducting a surveillance on Room 219; and that the individual in that room was a black male known as Antwon Green, he was suspected of dealing in narcotics, specifically crack. I advised her that we had just observed her enter into the room and leave about a minute later. I then advised her it’s against the law to possess crack cocaine or any type of controlled substance and if she had any controlled substance on her person, I would like her to give it to me.
S.L.R. answered “yeah” and produced a ziplock bag containing crack cocaine. At her juvenile trial, she was found guilty but adjudication was withheld and she was placed on community control.
S.L.R. urges that the trial court erred in admitting the cocaine because the consensual stop became a “seizure” based on the conduct of the officers. It appears to be her position that when the officer stated that he would like her to give him any controlled substance that she might have, it was “a show of authority” which restrained her freedom of movement. She maintains that she turned over the cocaine only because she thought she had to comply with his request.
The issue before us is whether the evidence supports the trial court’s finding that S.L.R. voluntarily agreed to comply with the officer’s request that she turn over any “controlled substance” that she might have in her possession. In Florida v. Bostick, 501 U.S. 429, 435, 111 S.Ct. 2882, 2386, 115 L.Ed.2d 389 (1991), the Supreme Court stated:
[Ejven when officers have no basis for suspecting an individual, they may generally ask questions of that individual ... and request consent to search ... as long as the police do not convey a message that compliance with their request is required.
In the instant case, the officers’ initial contact with the appellant when they approached her in the parking lot and asked if they could speak with her was consensual. Their actions and her agreement to answer their questions was an appropriate police/citizen encounter. Moreover, defense counsel conceded at trial that there was nothing wrong with the initial stop. But did the officer’s subsequent request that S.L.R. turn over any controlled substance cross the line?
The United States Supreme Court faced a similar issue in Bostick and defined “the appropriate inquiry” as “whether a reasonable person would feel free to decline the officer’s request or otherwise terminate the encounter.” Bostick, 501 U.S. at 429, 111 S.Ct. at 2383. In discussing whether a defendant’s cooperation with the police is voluntary, the court stated:
“Consent” that is the product of official intimidation or harassment is not consent at all. Citizens do not forfeit their constitutional rights when they are coerced to comply with a request that they would prefer to refuse.
Id. at 438, 111 S.Ct. at 2388. In the instant ease, S.L.R. does not contend that her path was blocked or that she was in any way prevented from merely walking away. So where is the intimidation, the harassment, or the coercion in this case?
The court in Thames v. State, 592 So.2d 733, 735-36 (Fla. 1st DCA), rev. denied, 599 So.2d 1280 (Fla.1992), made the analysis most applicable to the facts of our ease:
[T]he record reflects that this initial stop was consensual. The dispute pertains to whether appellant consented to accompany the officers to the sheriffs office or whether his conduct constituted a mere submission to authority. As the trier of fact, it was the trial court’s prerogative to determine this question, Wade v. State, 589 So.2d 322 (Fla. 1st DCA 1991), and the court’s resolution of such matters should not be disturbed on appeal unless clearly erroneous. Jordon v. State, 384 So.2d 277, 279 (Fla. 4th DCA 1980). Upon application of the foregoing principles, together with the presumption of correctness due a trial court’s ruling on a motion to suppress *980 Medina v. State, 466 So.2d 1046, 1049 (Fla.1985); State v. Pye, 551 So.2d 1287 (Fla. 1st DCA 1989), we conclude the trial court could find that appellant consented to accompany officers to the sheriffs office.[1]
By the same analysis, we conclude that, based on the testimony presented and on the court’s unique ability to view the maturity and intelligence of S.L.R., an opportunity this court does not enjoy, the evidence supported the trial judge’s finding that S.L.R.’s relinquishment of the cocaine was consensual.
AFFIRMED.
DAUKSCH and GOSHORN, JJ., concur.

. The Thames court went on to say:
The test for seizure of the person for fourth amendment purposes was set forth in United States v. Mendenhall, 446 U.S. 544, 554, 100 S.Ct. 1870, 1877, 64 L.Ed.2d 497 (1980), and was reaffirmed in California v. Hodari D., 499 U.S. 621, 111 S.Ct. 1547, 113 L.Ed.2d 690 (1991), as follows: "Mendenhall establishes that the test for existence of a ‘show of authority’ is an objective one: not whether the citizen perceived that he was being ordered to restrict his movement, but whether the officer's words and actions would have conveyed that to a reasonable person.” Here, the trial court accepted the officer’s version relating to the vol-untariness of appellant’s consent to go to the sheriff’s office which, as trier of fact, the court was entitled to do. Under the officers’ account of events, a reasonable person would not have considered his movement restricted.