STATE OF NEBRASKA, APPELLEE, V.
RODNEY R. CHITTY, APPELLANT.
571 N.W. 2d 794

Filed January 16, 1998.    No. S-96-334.

Jerry J. Fogarty, Deputy Hall County Public Defender, for appellant.

Don Stenberg, Attorney General, and Joseph P. Loudon for appellee.

WHITE, C.J., CAPORALE, WRIGHT, CONNOLLY, GERRARD, STEPHAN, and McCORMACK, JJ.

WRIGHT, J.
The State of Nebraska petitions for further review of a Nebraska Court of Appeals decision which reversed a district

court's conviction of Rodney R. Chitty for possession of a controlled substance (methamphetamine). See *State v. Chitty*, 5 Neb. App. 412, 559 N.W.2d 511 (1997).

## STANDARD OF REVIEW

A trial court's ruling on a motion to suppress, apart from determinations of reasonable suspicion to conduct investigatory stops and probable cause to perform warrantless searches, is to be upheld on appeal unless its findings of fact are clearly erroneous. In making this determination, an appellate court does not reweigh the evidence or resolve conflicts in the evidence, but, rather, recognizes the trial court as the finder of fact and takes into consideration that it observed the witnesses. *State v. Ready*, 252 Neb. 816, 565 N.W.2d 728 (1997); *State v. McCleery*, 251 Neb. 940, 560 N.W.2d 789 (1997); *State v. Konfrst*, 251 Neb. 214, 556 N.W.2d 250 (1996).

## FACTS

On August 14, 1995, Officer Charles Headley of the Grand Island Police Department was called to investigate a burglary. Based upon the victim's complaint, one individual was later arrested in connection with the incident. The individual arrested admitted that he was with another person.

Following his first contact with the victim, Headley was called back to the victim's residence in response to the victim's report of a suspicious person in the area. The description from the record indicated a male wearing a jean jacket and blue jeans. A full description of the alleged coperpetrator had not been provided by the person arrested.

Between 12:47 and 12:50 p.m., Headley saw a person later determined to be Chitty walking north two blocks from the site of the occurrence of the burglary. Before making contact, Headley observed Chitty from Headley's patrol car for one block. As Chitty turned west, Headley approached from behind. Headley pulled his vehicle alongside Chitty without activating the vehicle's overhead lights or addressing Chitty over the vehicle's "P.A. system."

Headley exited the patrol car and approached Chitty at a normal pace. Headley did not display a weapon or baton. As he came up to Chitty, who was still walking, Headley said,

" 'Excuse me, sir. Do you have a minute?' " Headley then asked Chitty his name, and he responded, "Rodney Chitty." Chitty said that he did not have an identification card or driver's license.

Headley told Chitty that he was investigating a suspicious person who had burglarized a home in the area and that Chitty matched the description of the suspicious person given by the victim. Chitty responded that "he'd heard about it." Headley stated that he considered this a surprising response, given the recency of the burglary.

Headley testified at the suppression hearing that when he asked Chitty what he was doing, Chitty said he was visiting a girl friend. When asked the woman's name and address, Chitty "changed his story," saying he was coming from a friend's house. It was unclear whether Chitty said he was visiting "Larry" or "Jerry" or "Larry and Jerry," but the record does indicate that he did not have the friend's or friends' address and that he did not know the person's or persons' last names. When asked where Larry and/or Jerry lived, Chitty pointed west down the street, which was the direction he was headed and not the direction from which he had come. Headley stated that during the conversation, Chitty seemed "[n]ervous, a little jumpy."

Upon the arrival of two other officers, Headley told Chitty he was going to speak to the victim. As Headley left, Chitty sat on the sidewalk. When Headley returned, he explained to Chitty that he fit the description of the individual who was called in as a suspicious person and that the police had earlier arrested another person who had admitted that he had been with another individual. Due to the inconsistencies in Chitty's story, Headley asked Chitty if they could speak with his friend or friends to confirm that Chitty had visited. Headley did not stop Chitty from leaving and did not tell him he could not leave. Chitty did not ask to leave. Headley asked Chitty if they could get into the patrol car due to the fact that it was raining and make a quick trip and speak with Larry and/or Jerry. Chitty responded that he had no problem with the officer's request.

Prior to getting in the car, Headley informed Chitty that it was departmental policy that anybody who entered a patrol car must be patted down for the officer's safety. Headley then asked

Chitty if he had any weapons, and Chitty said no. Headley stated that he still needed to check, to which Chitty said that "this was bullshit." Headley believed that Chitty said this because he was "upset that I didn't believe him, when he said that he had no weapons on him." Chitty never refused the pat-down search.

Headley explained that as he conducted the pat-down search, he had to feel underneath the jean jacket Chitty was wearing because it was fairly thick and that he could not otherwise identify a weapon smaller than a gun. During the pat down of Chitty's shirt, Headley felt a pack of cigarettes in his shirt pocket and testified that he felt something under the pack of cigarettes but could not tell what it was. Upon detecting the object, he asked Chitty what was in his breast pocket. Chitty responded that it was cigarettes, to which Headley said, "Well, I feel the cigarettes, but there is something underneath the cigarettes that I'm feeling." Headley testified during direct examination at the suppression hearing that he then "asked [Chitty] if he could show [him] what was in his pocket where his cigarettes were located." On cross-examination, Headley testified as follows:

A. I told him I was — you know, show me what that item is below his pack of cigarettes; I wanted to see it.

Q. All right. You asked him what's in there; he says "Cigarettes," and you said, "Show me what's in your pockets?"

A. Well, he responded by it was cigarettes, that is correct, but I knew that that item below the cigarettes was not a cigarette.

Q. Okay. Then you said, "Show me what's in the pocket?"

A. Yes, sir.

On redirect examination, Headley testified as follows:

Q. Officer, [Chitty's attorney] had asked you on cross-examination and had alluded that you informed Mr. Chitty you wanted him to show you what he had inside his pocket. Did you demand that or did you ask him what was in the pocket?

A. I just — I had asked him what was in the pocket.

Then, on recross-examination, Headley testified as follows:

Q. And then you said, "Take — take it out?" You wanted — you felt something below the cigarettes and you told him to take that out of his pocket?

A. Yes, sir.

Q. Okay. And he did so?

A. Or asked him to show it to me actually what that was.

During the trial, on direct examination, Headley again testified that he "asked [Chitty] if he could show" him the other object behind the cigarettes. On cross-examination, when asked if he had told Chitty to remove the item from his pocket, Headley responded that no, he had asked Chitty to do so. At that point, Chitty's attorney confronted Headley with his prior testimony on cross-examination at the suppression hearing:

Q. Do you recall making that testimony?

A. Asking him to show me the item.

Q. Do you recall the testimony I just read to you?

A. Yes.

Q. And in that testimony, you didn't say you asked; you said, "Show me what's in the pocket," is that correct?

A. Just show me.

Q. You said, "Show me what's in the pocket?"

A. That is correct.

Q. Okay. Those were your exact words, as you recall them? Those were your exact words, as you recall them?

A. To the best that I can recollect, sure.

Q. "Show me what's in the pocket?"

A. Show.

The district court denied Chitty's motion to suppress. The court's journal entry, filed following its order, stated:

1. The stop of the defendant by Officer Headley was permissible to converse with the defendant concerning a burglary occurring in the area. After conferring with the defendant concerning the burglary, suspicions were raised in the police officer's mind and the police officer's testimony was that in the rain the police officer requested the defendant come with him to a place to check out the defendant's "alibi" and the defendant concurred and the

officer, prior to placing the defendant in the police cruiser, pursuant to what the officer testified as police policy, conducted a frisk or pat-down of the defendant prior to the defendant entering the police cruiser. The defendant submitted to the pat-down, although he uttered a curse word, and in the pat-down, the officer did not detect any weapons but did detect a suspicious-feeling article in the shirt pocket of the defendant and asked the defendant what the object he felt was and asked the defendant to show him the object and the defendant became angry, threw cigarettes in the pocket on the sidewalk and then threw the other item in his pocket in the air and started walking off cursing and swearing. The item the police officer retrieved, which was thrown in the air, is the item in controversy on the motion to suppress.

2. As previously stated, the officer had probable cause to stop and talk to the defendant. When the officer was going to take the defendant to check his alibi, the officer requested the defendant to comply with a policy of being pat searched for weapons, which the defendant complied with. The request and policy of the police department and this police officer to pat search somebody for weapons prior to somebody entering the police cruiser is a valid policy for the officer's protection and safety. The defendant could have indicated to the police officer very easily that he did not wish to enter the police cruiser and be pat searched and the Court may only assume that that would not occur at that point.

3. After the pat search, the officer felt something suspicious and requested the defendant to show him the article. What the defendant did was show him the article. The question becomes whether at that point in time that the officer requested the defendant to show him the article whether the defendant was in police custody through either the application of physical force or the defendant's submission to an officer's assertion and [sic] authority. California v. Hodari D.[,] 499 U.S. 621[, 111 S. Ct. 1547, 113 L. Ed. 2d 690 (1991)]. If the defendant would have declined to show the police officer what the object was

and the police officer would have arrested the defendant or seized the object, the ruling would have been different than this ruling. The defendant, however, became upset and voluntarily took the object out of his pocket, threw it in the air, and walked off cursing and swearing according to the evidence. The defendant had the option of not producing what was in his pocket at the request of the officer. The question is what was the situation concerning defendant's submission to the authority of the police at that time and this Court feels that that is answered by the defendant's throwing the item up in the air and walking away cursing and swearing. The officers did not seize the item in the pocket from the defendant. The defendant voluntarily gave the officers the item contained in his pocket and walked away. By the defendant's walking away, it shows to this Court the thought of the defendant that he was not coerced but rather made a free choice, although it might ultimately be to the defendant's detriment.

4. This Court is aware of Minnesota v. Dickerson, [508 U.S. 366, 113 S. Ct. 2130, 124 L. Ed. 2d 334 (1993)], but in that case, the officer actually seized the item from the pocket of the defendant. In this particular case, the officer did not seize the item. Because the officer was in contact with and frisked the defendant for good reason and the defendant consented emptying his pockets, the motion to suppress is overruled.

On appeal, the Court of Appeals found that at the time that Headley offered to take Chitty to his friend's or friends' house to get Chitty's alibi information, Headley had a reasonable suspicion that Chitty was involved in some criminal activity. As a result, Headley was then engaged in an "investigative stop" pursuant to *Terry v. Ohio*, 392 U.S. 1, 88 S. Ct. 1868, 20 L. Ed. 2d 889 (1968), and was permitted to pat down Chitty for the purpose of securing Headley's safety as an officer.

The Court of Appeals found that the stop itself was lawful as a voluntary police-citizen contact, at least in the infancy of the stop, and then as a *Terry* stop as it progressed. The court held that Headley's stop of Chitty, continuing through his request for a visit with Larry and/or Jerry, was lawful and concluded that in

the instant case, the evidence was such that it was police department policy to search a suspect before placing the suspect in a patrol car and that since Headley was going to have his back to Chitty while in the vehicle or at least be otherwise occupied with driving the vehicle, it was reasonable to conduct a brief pat-down search for weapons before placing Chitty in a police vehicle. Therefore, the court concluded that the pat-down search that was conducted was reasonable and did not offend the Fourth Amendment to the U.S. Constitution.

The Court of Appeals then found that there was no evidence that the object which Headley felt behind the pack of cigarettes was perceived to be a weapon, justifying its seizure under *Terry*, nor was it immediately discernible during the course of the pat-down search that it was contraband. Relying on Headley's testimony that he "couldn't tell what it was by feel," the court held that the seizure of the methamphetamine could not be sustained as a part of a *Terry* pat-down search and did not come within the "plain feel" exception to the restrictions of the *Terry* pat-down search as set forth in *Minnesota v. Dickerson*, 508 U.S. 366, 113 S. Ct. 2130, 124 L. Ed. 2d 334 (1993). The court stated:

> In the case at hand, the evidence shows that the officer felt the object, did not know what it was, and told Chitty: "'Show me what's in the pocket.'" This is clearly an assertion of the officer's authority. When Chitty removed the methamphetamine and threw it, he had submitted to the officer's authority. The legal conclusion that this was a consensual and voluntary "emptying [of] his pockets" rather than a seizure simply cannot be sustained.

*State v. Chitty*, 5 Neb. App. 412, 423-24, 559 N.W.2d 511, 519 (1997).

The Court of Appeals found that the district court should have suppressed the evidence of the methamphetamine and that without the evidence, there was no evidence upon which to sustain the conviction, and, therefore, the conviction was reversed. See *id.*

## ASSIGNMENTS OF ERROR

The State assigns as error that the Court of Appeals erred in resolving a conflict in the evidence and in making a factual determination that Headley demanded to see the contents of

Chitty's pocket, thereby misapplying the standard of review applicable to consensual searches.

## ANALYSIS

We granted further review to clarify the scope of review in this case. The issue decided by the trial court was whether Chitty voluntarily gave the officers the item contained in his pocket. This was a factual determination made by the trial court and as such was subject to our review as to whether this finding of fact was clearly erroneous.

In reversing the trial court's "legal conclusion" that Chitty had voluntarily emptied his pockets, the Court of Appeals relied on *Ornelas v. United States*, 517 U.S. 690, 116 S. Ct. 1657, 134 L. Ed. 2d 911 (1996), which states that determinations of reasonable suspicion for investigative stops and probable cause to perform warrantless searches should be reviewed de novo by appellate courts. The Court in *Ornelas* "hasten[ed] to point out that a reviewing court should take care both to review findings of historical fact only for clear error and to give due weight to inferences drawn from those facts by resident judges and local law enforcement officers." 517 U.S. at 699.

In *State v. Ready*, 252 Neb. 816, 565 N.W.2d 728 (1997), we thus explained that a trial court's ruling on a motion to suppress, apart from determinations of reasonable suspicion to conduct investigatory stops and probable cause to perform warrantless searches, is to be upheld on appeal unless its findings of fact are clearly erroneous. Once the determinations of reasonable suspicion and probable cause have been reviewed de novo, the appellate court reviews the trial court's findings of fact, giving due weight to the inferences drawn from those facts by the trial judge. In making this review, an appellate court does not reweigh the evidence or resolve conflicts in the evidence, but recognizes the trial court as the finder of fact and takes into consideration that it observed the witnesses. *Id.*

The Fourth Amendment test for a valid consent to search is that the consent be voluntary, and " '[v]oluntariness is a question of fact to be determined from all the circumstances.' " *Ohio v. Robinette*, 519 U.S. 33, 40, 117 S. Ct. 417, 136 L. Ed. 2d 347 (1996) (quoting *Schneckloth v. Bustamonte*, 412 U.S. 218, 93 S.

Ct. 2041, 36 L. Ed. 2d 854 (1973)). See, also, *U.S. v. Payne*, 119 F.3d 637 (8th Cir. 1997) (voluntariness is reviewed for clear error). Likewise, a court's determination as to whether the compliance with an officer's request is voluntary is a question of fact. *S.L.R. v. State*, 652 So. 2d 978 (Fla. App. 1995). The trial court made a factual finding that pursuant to Headley's request, Chitty voluntarily took the methamphetamine out of his pocket and threw it in the air and that the act of revealing the methamphetamine was not coerced, but, rather, was Chitty's free choice. Because voluntariness is a question of fact, we review whether the trial court's finding is clearly erroneous. See *State v. Ready, supra*. In making this determination, we do not reweigh the evidence or resolve conflicts in the evidence, but, rather, recognize the trial court as the finder of fact and take into consideration that it observed the witnesses. *Id.*

In *State v. Konfrst*, 251 Neb. 214, 556 N.W.2d 250 (1996), we considered whether the right to be free from an unreasonable search and seizure had been waived by a consent to a search. We held that to be effective, a consent must be a free and unconstrained choice and not the product of a will overborne. The consent must be given voluntarily and not as a result of duress or coercion, whether express, implied, physical, or psychological. The determination of whether a consent to search is voluntarily given is a question of fact to be determined from the totality of the circumstances surrounding the giving of consent. *Id.*

We conclude that the trial court's determination was not clearly erroneous. The evidence supports a finding that at the time of Headley's request, Chitty felt free to leave. As the trial court pointed out, the fact that Chitty later started to walk off without being stopped showed that Chitty thought he was not coerced and made a free choice. There is also evidence to support the trial court's finding that Headley's statement was a request rather than a demand.

Since we do not reweigh or resolve conflicts in the evidence and take into consideration that the trial court observed the witnesses, we find that it was not clearly erroneous for the trial court to find that Chitty's relinquishment of the methamphetamine was voluntary and not the product of a will overborne. We therefore reverse the decision of the Court of

Appeals, and the cause is remanded to that court with directions to reinstate the conviction and sentence.

REVERSED AND REMANDED WITH DIRECTIONS.

CAPORALE, J., dissenting.

I respectfully dissent. The circumstances under which the defendant herein, Rodney R. Chitty, was inveigled into agreeing to enter the police vehicle and subsequently patted down rendered the search involuntary. See *State v. Veiman*, 249 Neb. 875, 546 N.W.2d 785 (1996) (questioning of defendant while being transported to hospital in police vehicle after being told accident had to be investigated rendered such questioning custodial interrogation).

As a consequence, the trial court's finding that Chitty voluntarily reached inside his shirt pocket to produce the contraband is clearly wrong. I would therefore affirm the judgment of the Court of Appeals.

WHITE, C.J., and STEPHAN, J., join in this dissent.