STATE OF NEBRASKA, APPELLEE, V.
DAVID E. SALISBURY, APPELLANT.
579 N.W. 2d 570

Filed May 19, 1998.    No. A-97-983.

Thomas C. Riley, Douglas County Public Defender, and
Carlos A. Ziegenhirt for appellant.

Herbert M. Fitle, Omaha City Attorney, Martin J. Conboy III, Omaha City Prosecutor, and Richard L. Dunning for appellee.

MILLER-LERMAN, Chief Judge, IRWIN and INBODY, Judges.

IRWIN, Judge.

## I. INTRODUCTION

David E. Salisbury appeals his conviction and sentence for theft by unlawful taking, in violation of § 20-151 of the Omaha Municipal Code. Generally, Salisbury contends that it was improper for the county court for Douglas County to order that he pay restitution in the amount of $2,577. We note that the ordinances under which Salisbury was charged and sentenced are not in the record before us. For the reasons stated below, we affirm.

## II. FACTUAL BACKGROUND

On October 3, 1996, Salisbury was charged in the county court for Douglas County with theft by unlawful taking in violation of § 20-151 of the Omaha Municipal Code. The complaint provides that on or about August 26, Salisbury "did, unlawfully, purposely or knowingly take, use or exercise control over the property of another person FIRST NATIONAL BANK, with the intent to deprive said person, temporarily or permanently, of such property or its use, contrary to the City Ordinance of the City of Omaha . . . ."

On January 3, 1997, Salisbury entered a plea of no contest. Before the court accepted his plea, the court advised Salisbury of the rights he would waive by pleading no contest and informed Salisbury that the penalties for the offense included up to 6 months in jail, a $500 fine, or both. The State provided a factual basis for the plea. According to the State, the offense occurred between August and October 1996 at First National Bank of Omaha (bank) where Salisbury was employed as a security guard. A video camera recorded Salisbury scooping coins totaling $484 out of a coin-sorting machine at the bank on October 8. The total amount of shortages from that machine from August 26 through October 8 was $2,577. The prosecutor stated further that the evidence of Salisbury's responsibility for the thefts prior to October 8 was his employment at that branch

during the relevant time period and his statement to a bank investigator after the October 8 theft that in the past he had converted the coins to dollar bills. The State also offered the police report. Thereafter, the court accepted Salisbury's plea.

The case proceeded to sentencing. Salisbury's attorney stated that Salisbury was willing to make restitution. When a discussion ensued regarding the amount of restitution owed, Salisbury admitted that he took $484 but denied that he had taken additional money. A restitution hearing was then held to determine the amount owed. A fraud investigator with the bank testified that $2,577 was the amount taken from the coin-sorting machine at the bank from August to October 1996. After hearing the evidence, the court found the bank's loss to be $2,577.

The court sentenced Salisbury to 180 days' probation. He was also ordered to make restitution in the amount of $2,577 and to pay a $150 fine. Upon Salisbury's appeal to district court, the district court affirmed his conviction and sentence. This appeal timely followed.

### III. ASSIGNMENTS OF ERROR

Salisbury assigns and argues that the amount of restitution exceeded the amount allowed by Nebraska statute. He also assigns and argues that he was not adequately advised prior to his plea that he could be ordered to pay restitution.

### IV. ANALYSIS

#### 1. RESTITUTION

Salisbury argues that Nebraska statutes regarding restitution apply and, particularly, that Neb. Rev. Stat. § 29-2280 (Reissue 1995) was not complied with in this case. He contends that the county court's order that he pay $2,577 in restitution was improper under § 29-2280 because that figure includes losses sustained by the bank that were not the direct result of the offense for which he was convicted. Salisbury concludes that he could be ordered to make restitution of only $484, which represents the loss incurred by the bank as a result of the theft of October 8, 1996.

We note that Salisbury was convicted and sentenced for violating a municipal ordinance. Salisbury failed to offer the rel-

evant ordinances at the trial court level, and they are not in the record before us. See, *State v. Hill*, 254 Neb. 460, 577 N.W.2d 259 (1998) (assuming that material allegations in long-form complaint reflect substantive content of ordinances charged); *State v. Bush*, 254 Neb. 260, 576 N.W.2d 177 (1998) (holding that appellate court will consider ordinances if offered as evidence at trial level or if included in transcript in record before court). Usually, when a defendant appeals a conviction and sentence under a municipal ordinance, claiming insufficiency of the evidence and excessiveness of the sentence, an appellate court's consideration of the assignments of error requires examination of the specific ordinance involved, and an appellate court will not take judicial notice of an ordinance not in the record but assumes that a valid ordinance creating the offense charged exists, that the evidence sustains the findings of the trial court, and that the sentence is within the limits set by the ordinance. *State v. Buescher*, 240 Neb. 908, 485 N.W.2d 192 (1992); *State v. King*, 239 Neb. 853, 479 N.W.2d 125 (1992). This is known as the ordinance rule and normally disposes of an appeal when the record does not contain the applicable city ordinance. However, we address Salisbury's argument because it is one of first impression in Nebraska. More particularly, the issue is whether the Nebraska restitution statute, § 29-2280, applies where a defendant is convicted of violating a municipal ordinance and is ordered to pay restitution.

### (a) City's Authority to Legislate

The city of Omaha has the authority to enact ordinances pursuant to Nebraska statutes. Neb. Rev. Stat. § 14-102 (Cum. Supp. 1996) provides that a city such as Omaha shall have the power by ordinance to make and enforce all police regulations for the good government, general welfare, health, safety, and security of the city and its citizens. In the exercise of the police power, the city may pass all needful and proper ordinances and shall have the power to impose fines, penalties, and imprisonment for the violation of any ordinance. *Id.* Neb. Rev. Stat. § 14-102.01 (Reissue 1997) provides that a "city of the metropolitan class may make all such ordinances . . . not inconsistent with the general laws of the state . . . ." Generally, there

are two situations in which a city's authority to enact law is limited. We discuss these situations below.

### (b) State's Preemption of Field

■ Although a city may enact ordinances criminalizing and punishing conduct, a city may not legislate in a field that the state has preempted. See *State v. Belitz*, 203 Neb. 375, 278 N.W.2d 769 (1979), *cert. denied* 444 U.S. 933, 100 S. Ct. 278, 62 L. Ed. 2d 191. Regarding the present case, the State of Nebraska has not specifically preempted the area of restitution. Section 29-2280 does not preclude governmental units other than the State from making any law, ordinance, or regulation relating to restitution. But see, *Belitz, supra*; *Midtown Palace, Inc. v. City of Omaha*, 193 Neb. 785, 229 N.W.2d 56 (1975) (holding that through enactment of Neb. Rev. Stat. § 28-926.33 (Cum. Supp. 1974), State preempted field of regulation of obscenity where statute specifically stated that no municipality or other governmental unit shall make any law, ordinance, or regulation in that area).

### (c) Conflict With State Law

■ In addition, a city may not pass legislation which conflicts, or is inconsistent, with state law. See *Belitz, supra*. An ordinance may not permit or license that which a statute forbids or prohibits, and vice versa. *Cincinnati v. Thompson*, 96 Ohio App. 3d 7, 643 N.E.2d 1157 (1994); *Richfield City v. Walker*, 790 P.2d 87 (Utah App. 1990). See, generally, 62 C.J.S. *Municipal Corporations* § 145 (1949).

■ We conclude that § 29-2280 sets forth a state policy regarding the rights afforded to persons ordered to make restitution. In particular, § 29-2280 provides, among other things, that unless the parties consent, a defendant may not be ordered to make restitution for losses sustained as a result of conduct for which the defendant was not convicted. A municipality or other governmental unit cannot permissibly enact laws inconsistent with the policy set forth in the state restitution statutes. See, *Cincinnati, supra*; *Richfield City, supra*; 62 C.J.S., *supra*, § 145.

■ We also conclude that in order to apply the previously mentioned ordinance rule consistently, we must presume the ordinances are consistent with state law, because the relevant

ordinance or ordinances are not in the record. If the municipal ordinance under which Salisbury was charged was similar to the state statute concerning the same offense, for example, Salisbury could have properly been ordered to make restitution for $2,577. Neb. Rev. Stat. § 28-518(7) (Reissue 1995) provides that amounts taken pursuant to one scheme or course of conduct from one person may be aggregated to determine the classification of the offense. Based on the applicable law and the record before us, we conclude that the policy expressed in Neb. Rev. Stat. § 29-2280 et seq. (Reissue 1995) was complied with in this case. Salisbury's contention to the contrary is without merit.

## 2. ADVISEMENT OF PENALTIES

Salisbury also argues that the county court did not properly advise him prior to the entry of his plea that restitution was a possible penalty for the offense charged. Our review of the record shows that he was not advised that restitution could be ordered. However, Salisbury's attorney indicated that Salisbury was "more than willing to make restitution."

In *State v. Mentzer*, 233 Neb. 843, 845-46, 448 N.W.2d 409, 410-11 (1989), the Nebraska Supreme Court held that

> while in order for a defendant to enter a voluntary and intelligent plea of guilty, he or she must know the penalty for the crime to which he or she is pleading, and although it is preferable that such knowledge be imparted by the judge accepting the plea, it is nonetheless possible to prove the defendant's knowledge by other means.

See, also, *State v. White*, 238 Neb. 840, 472 N.W.2d 720 (1991). In *Mentzer, supra*, the sentencing court did not advise the defendant that restitution could be ordered, but the defendant advised the court through his attorney that he was willing to make restitution. The Nebraska Supreme Court concluded that the plea was proper because it was apparent from the record that the defendant had knowledge that restitution was a possible penalty for the crime of which he was convicted. As did the defendant in *Mentzer*, Salisbury indicated at sentencing, through his attorney, that he was willing to make restitution, establishing that he had knowledge of the possibility of restitution through "other means." Therefore, the order of restitution was not improper on this basis.

### 3. Voluntariness of Plea

In his brief, Salisbury also argues that his plea was involuntary because he did not understand that he was charged with several thefts occurring from August to October 1996. Salisbury contends that he believed he was charged with and pleading to a single theft that occurred October 8. Salisbury did not assign the voluntariness of his plea as error. See *Lange v. Crouse Cartage* Co., 253 Neb. 718, 572 N.W.2d 351 (1998) (holding that assignments of error are to be strictly construed). In the absence of plain error, an appellate court considers only claimed errors which are both assigned and argued. *Billups v. Troia*, 253 Neb. 295, 570 N.W.2d 706 (1997); *State v. McBride*, 252 Neb. 866, 567 N.W.2d 136 (1997). We have reviewed the record before us for plain error and find none.

### V. CONCLUSION

For the reasons stated below, we affirm.

AFFIRMED.