In re Interest of Frederick C., a child under 18 years of age.
State of Nebraska, appellee, v.
Frederick C., a minor child, appellant.
594 N.W. 2d 294

Filed April 20, 1999.   No. A-98-725.

Thomas C. Riley, Douglas County Public Defender, and Margaret M. Maloney for appellant.

James S. Jansen, Douglas County Attorney, and Robert A. Mooney for appellee.

MUES, INBODY, and CARLSON, Judges.

INBODY, Judge.

## I. INTRODUCTION

This case involves the appeal of an adjudication of Frederick C. pursuant to Neb. Rev. Stat. § 43-247(2) (Supp. 1997) for possession of a controlled substance, to wit, crack cocaine. For the reasons set forth herein, we affirm.

## II. STATEMENT OF FACTS

On February 17, 1998, at approximately 6:45 p.m., Omaha police officers Joseph B. Baudler and Steve Jennum conducted a traffic stop of a vehicle near 30th and Lake Streets in Omaha,

Douglas County, Nebraska. The reason for the stop was that the front passenger portion of the vehicle's windshield was shattered, which caused Officer Baudler to believe that the vehicle was in violation of either a state traffic code or an Omaha municipal ordinance due to the driver's vision being obstructed. There were three people inside the vehicle: the driver; a front seat passenger, Stephen C.; and Frederick, who was a back seat passenger.

As the officers approached the vehicle, Officer Baudler observed Stephen, the front seat passenger, smoking a cigarette. Officer Baudler determined that Stephen was a minor and ordered him to step out of the vehicle. After Stephen exited the vehicle, Officer Baudler observed a torn plastic baggie, which he believed to contain marijuana residue, on the front passenger seat. For the officers' safety, Officer Baudler conducted a pat-down search of Stephen, which revealed no weapons. Officer Baudler then ordered Frederick out of the vehicle and conducted a pat-down search of his person, again finding no weapons. Officer Baudler then began talking to Frederick, who was mumbling his answers. Officer Baudler believed that Frederick was hiding something in his mouth, which Baudler suspected was drugs. Officer Baudler asked Frederick to open his mouth. When Frederick complied, Officer Baudler observed a plastic baggie protruding from the sides of Frederick's tongue. Officer Baudler grabbed Frederick and "told" or "asked" him to spit the item out of his mouth. Frederick complied, spitting out a plastic baggie containing crack cocaine. Frederick was then placed under arrest and transported to the Omaha Police Division where he was advised of his *Miranda* rights, which he waived.

During the interview, Frederick initially sat quietly and did not respond to Officer Baudler's questions. However, later in the 5- to 10-minute interview, Frederick stated that he did not use cocaine, but that he had been selling cocaine for approximately 2 months. Further, he stated that he had found the crack cocaine that he had on him lying on the ground and that the money that he had with him had been attained from selling drugs. At no time during the interview did Frederick give any indication that he did not wish to speak to Officer Baudler, nor did Frederick request counsel.

On February 20, 1998, an adjudication petition was filed alleging that Frederick was a child within the meaning of § 43-247(2) because he had committed the criminal offense of possession of a controlled substance, to wit, crack cocaine, in violation of Neb. Rev. Stat. § 28-416(3) (Reissue 1995). On March 2, the juvenile court entered a plea of denial on Frederick's behalf.

On May 26, 1998, Frederick filed a motion to suppress the physical evidence and his statement allegedly obtained in violation of his constitutional rights. A hearing was held on May 29, and facts as previously set forth were presented to the court. From the bench, the court denied Frederick's suppression motion, finding that the initial stop of the vehicle was reasonable because Officer Baudler stopped the vehicle for having a partially shattered windshield which obstructed the driver's vision. Further, once the vehicle was stopped, Officer Baudler observed a minor smoking a cigarette in violation of the law, which led him to ask the minor to exit the vehicle. When the minor exited the vehicle, Officer Baudler observed, in plain view, a baggie containing marijuana residue, causing Officer Baudler to have a suspicion about other drugs being present in the vehicle. Further, the court found that Frederick voluntarily opened his mouth when asked to do so by Officer Baudler and that that is when Officer Baudler viewed the plastic baggie under the sides of Frederick's tongue.

Finally, with regard to Frederick's initial silence during the interrogation, the juvenile court found that the fact that the interrogation lasted only 5 to 10 minutes was important because "[i]t would not surprise me that upon silence the officer would ask a few times, would he [Frederick] talk to me [Officer Baudler]." An order denying Frederick's motion to suppress, not including any factual findings, was filed with the clerk of the district court on June 1.

A hearing on the State's adjudication petition was held on June 12, 1998. Frederick renewed his motion to suppress, which was again denied by the juvenile court. The State then provided a factual basis, including the allegation that Frederick was born on June 1, 1981, which Frederick did not dispute. On June 12, 1998, the juvenile court found that the State proved, beyond a

reasonable doubt, that Frederick is a child within the meaning of § 43-247(2). The order of adjudication, filed June 15, has been timely appealed to this court.

## III. ASSIGNMENTS OF ERROR

On appeal, Frederick contends that the juvenile court erred in overruling his motion to suppress physical evidence because the officers lacked probable cause to stop the vehicle in which Frederick was a passenger and because the search of his person exceeded the parameter of a *Terry* search and was performed without his consent. See *Terry v. Ohio*, 392 U.S. 1, 88 S. Ct. 1868, 20 L. Ed. 2d 889 (1968). Frederick further argues that his statements to Officer Baudler were obtained in violation of his *Miranda* rights.

## IV. STANDARD OF REVIEW

A trial court's ruling on a motion to suppress, apart from determinations of reasonable suspicion to conduct investigatory stops and probable cause to perform warrantless searches, is to be upheld on appeal unless its findings of fact are clearly erroneous. *State v. Merrill*, 252 Neb. 510, 563 N.W.2d 340 (1997); *State v. Beeken*, 7 Neb. App. 438, 585 N.W.2d 865 (1998). In making this determination, an appellate court does not reweigh the evidence or resolve conflicts in the evidence, but, rather, recognizes the trial court as the finder of fact and takes into consideration that it observed the witnesses. *State v. Chitty*, 253 Neb. 753, 571 N.W.2d 794 (1998); *State v. Beeken, supra.*

## V. DISCUSSION

### 1. MOTION TO SUPPRESS

#### (a) Initial Stop of Vehicle

First, Frederick contends that the trial court erred in overruling his motion to suppress because the officers lacked probable cause to stop the vehicle in which he was a passenger. Although an adjudication is not a criminal proceeding, we take guidance from the criminal laws of this state. *In re Interest of Cory P.*, 7 Neb. App. 397, 584 N.W.2d 820 (1998); *In re Interest of Shea B.*, 3 Neb. App. 750, 532 N.W.2d 52 (1995).

The test to determine if an investigative stop was justified is whether the police officer had a reasonable suspicion,

based on articulable facts, which indicated that a crime had occurred, was occurring, or was about to occur and that the suspect might be involved. *State v. Hiemstra*, 6 Neb. App. 940, 579 N.W.2d 550 (1998). See, also, *State v. Bowers*, 250 Neb. 151, 548 N.W.2d 725 (1996); *State v. Smith*, 4 Neb. App. 219, 540 N.W.2d 374 (1995). When a police officer observes a traffic offense, regardless of how minor, the officer has probable cause to stop the driver of the vehicle. *State v. Hiemstra, supra*; *State v. Chronister*, 3 Neb. App. 281, 526 N.W.2d 98 (1995).

It is clear from the record in this case that the sole reason articulated by Officer Baudler for his initial stop of the vehicle in which Frederick was a back seat passenger was that Officer Baudler believed that the vehicle was in violation of either a state traffic code or an Omaha municipal ordinance due to the driver's vision being obstructed because of a shattered windshield on the passenger side. We have reviewed Nebraska statutes and found nothing specifically prohibiting driving a vehicle with a shattered windshield. Further, there are no Omaha municipal ordinances included in the record before this court to enable us to determine if having a partially shattered windshield that obstructs the driver's vision is a violation of an Omaha municipal ordinance. See, *State v. Bush*, 254 Neb. 260, 576 N.W.2d 177 (1998) (holding that appellate court will consider ordinances if offered as evidence at trial level or if included in transcript in record before court); *State v. Salisbury*, 7 Neb. App. 86, 579 N.W.2d 570 (1998).

Although the alleged criminal conduct at issue in the instant case (driving a motor vehicle with a partially shattered windshield) is not the offense for which Carter was adjudicated and found guilty beyond a reasonable doubt, it appears to us that the following rule of law should be extended to apply to the situation in this case:

> Usually, when a defendant appeals a conviction and sentence under a municipal ordinance, claiming insufficiency of the evidence and excessiveness of the sentence, an appellate court's consideration of the assignments of error requires examination of the specific ordinance involved, and an appellate court will not take judicial notice of an ordinance not in the record but assumes that a valid ordi-

nance creating the offense charged exists, that the evidence sustains the findings of the trial court, and that the sentence is within the limits set by the ordinance.

*Id.* at 89, 579 N.W.2d at 573. See, also, *State v. Buescher*, 240 Neb. 908, 485 N.W.2d 192 (1992); *State v. King*, 239 Neb. 853, 479 N.W.2d 125 (1992). Thus, we hold that when police contact with an accused is precipitated by the accused's alleged violation of a municipal ordinance which contact, in turn, leads to the accused's conviction on unrelated criminal charges, an appellate court will not take judicial notice of the ordinance not in the record, but assumes that a valid ordinance creating the offense triggering the contact with law enforcement exists and that the evidence offered by the State is sufficient to support the officer's contact with the accused.

Applying this standard to the case at bar, Officer Baudler testified that he stopped the vehicle for having a partially shattered windshield that obstructed the driver's vision, which Officer Baudler believed was in violation of either a state traffic code or an Omaha municipal ordinance. Because the record before this court does not include any municipal ordinances, the court assumes that a valid ordinance prohibiting driving a vehicle while the driver's vision was obstructed exists and that Officer Baudler's testimony concerning the partially shattered windshield was sufficient to support his reasonable belief that the car was in violation of a state traffic code or municipal ordinance which justified Officer Baudler's stop of the vehicle. Therefore, we reject Frederick's claim that the initial stop of the vehicle in which he was a passenger was without probable cause.

### (b) Search of Frederick's Person

Second, Frederick contends that Officer Baudler's search of his person violated his constitutional rights because the search exceeded the parameter of a *Terry* search and because Frederick did not voluntarily consent to a search of his person. The State argues that the search was permissible because Frederick did voluntarily consent to the search. It is apparent that if the State's position is correct and Frederick did voluntarily consent to the search of his person, then Frederick's assignment of error is without merit. Therefore, we proceed to address this issue.

The Fourth Amendment test for a valid consent to search is that the consent be voluntary. *State v. Chitty*, 253 Neb. 753, 571 N.W.2d 794 (1998). See, also, *Ohio v. Robinette*, 519 U.S. 33, 117 S. Ct. 417, 136 L. Ed. 2d 347 (1996); *Schneckloth v. Bustamonte*, 412 U.S. 218, 93 S. Ct. 2041, 36 L. Ed. 2d 854 (1973). Whether a consent to search is voluntary is a question of fact to be determined from the totality of the circumstances surrounding the consent to search. *State v. Chitty, supra.* Likewise, a court's determination as to whether the compliance with an officer's request is voluntary is a question of fact. *Id.* An appellate court reviews questions of fact under the clearly erroneous standard. *Id.*

The juvenile court made a factual finding that Frederick voluntarily opened his mouth when asked to do so by Officer Baudler and that that is when Officer Baudler viewed the plastic baggie under the sides of Frederick's tongue. The record supports the juvenile court's finding, and thus, we cannot say that this finding was clearly erroneous. Therefore, we must also find that Frederick's assigned error regarding the juvenile court's denial of his motion to suppress the fruits of the search is without merit.

## 2. INVOCATION OF RIGHT TO REMAIN SILENT

Finally, Frederick contends that the trial court erred in overruling his motion to suppress statements because such statements were obtained in violation of Frederick's right to remain silent. Frederick contends that his initial lack of response to Officer Baudler's questions was an invocation of his right to remain silent and that Frederick did not subsequently waive his *Miranda* rights. Instead, Frederick claims "he simply submitted to the constant barrage of questions thrown at him by Officer Baudler." Brief for appellant at 21.

In *Miranda v. Arizona*, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966), the U.S. Supreme Court held that the Fifth Amendment protection of the privilege against self-incrimination requires that individuals be given certain warnings regarding their rights and that a voluntary, knowing, and intelligent waiver of those rights must be made before incriminating responses to custodial interrogation can be admissible in

a criminal proceeding. *State v. Bowers*, 250 Neb. 151, 548 N.W.2d 725 (1996); *State v. McCurry*, 5 Neb. App. 526, 561 N.W.2d 244 (1997). See, also, *State v. Veiman*, 249 Neb. 875, 546 N.W.2d 785 (1996).

More recently, in *Davis v. United States*, 512 U.S. 452, 459, 114 S. Ct. 2350, 129 L. Ed. 2d 362 (1994), the U.S. Supreme Court held that invocation of the *Miranda* right to counsel requires that a suspect "unambiguously request counsel." This means that the suspect "must articulate his desire to have counsel present sufficiently clearly that a reasonable police officer in the circumstances would understand the statement to be a request for an attorney." *Id.* This "clear articulation rule" has been extended to the *Miranda* right to remain silent by most courts which have considered the issue. See, e.g., *State v. Greybull*, 579 N.W.2d 161 (N.D. 1998); *State v. Gaspard*, 709 So. 2d 213 (La. App. 1998); *State v. Ross*, 203 Wis. 2d 66, 552 N.W.2d 428 (Wis. App. 1996); *Dowthitt v. State*, 931 S.W.2d 244 (Tex. Crim. App. 1996); *Bowen v. State*, 322 Ark. 483, 504, 911 S.W.2d 555, 565 (1995) (in applying *Davis v. United States, supra*, there is "no distinction between the right to counsel and the right to remain silent with respect to the manner in which it must be effected"); *State v. Williams*, 535 N.W.2d 277, 285 (Minn. 1995) ("nothing short of an unambiguous or unequivocal invocation of the right to remain silent will be sufficient to implicate *Miranda's* protections"); *State v. Bacon*, 163 Vt. 279, 295, 658 A.2d 54, 65 (1995) ("[w]ithout doubt, [*Davis v. United States, supra*,] applies equally to situations in which a defendant who has waived his *Miranda* rights ambiguously invokes the right *to remain silent* during the subsequent interrogation"); *State v. Morris*, 255 Kan. 964, 880 P.2d 1244 (1994); *State v. Farley*, 192 W. Va. 247, 452 S.E.2d 50 (1994). See, also, *State v. Sabetta*, 680 A.2d 927, 932 (R.I. 1996) (*Davis v. United States, supra*, not discussed, but court held that defendant must make statement that is "clear articulation of his desire to remain silent").

Likewise, federal courts considering the issue have also followed suit. See, *U.S. v. Johnson*, 56 F.3d 947 (8th Cir. 1995) (defendant must make clear or unequivocal indication of right to remain silent); *Coleman v. Singletary*, 30 F.3d 1420 (11th Cir.

1994); *Bui v. DiPaolo*, 985 F. Supp. 219 (D. Mass. 1997); *U.S. v. Hicks*, 967 F. Supp. 242 (E.D. Mich. 1997); *U.S. v. Maisonneuve*, 950 F. Supp. 1280 (D. Vt. 1996); *U.S. v. Andrade*, 925 F. Supp. 71, 79 (D. Mass 1996) ("the concern that led to the clear articulation rule with respect to the invocation of right to counsel is no less significant in the case of an invocation of the right to remain silent); *Evans v. Demosthenes*, 902 F. Supp. 1253 (D. Nev. 1995); *U.S. v. Sanchez*, 866 F. Supp. 1542 (D. Kan. 1994) (*Davis v. United States, supra*, rule applies to invocations of right to remain silent).

▓▓▓ We follow the majority of jurisdictions which have considered the issue and have likewise held that the *Davis* "clear articulation rule" is applicable to invocations of the *Miranda* right to remain silent. A suspect must articulate his or her desire to cut off questioning with sufficient clarity that a reasonable police officer in the circumstances would understand the statement to be an assertion of the right to remain silent. If the accused's statement is ambiguous or unequivocal, the police officer has no duty to clarify the suspect's intent, and the officer may proceed with the interrogation.

Thus, the question remaining in the instant case is this: Did Frederick's initial silence during the 5- to 10-minute interview constitute an unambiguous or unequivocal assertion of his right to remain silent? We think not. At best, Frederick's initial silence can only be classified as an equivocal or ambiguous assertion of his right to remain silent. It was not an act of sufficient clarity that a reasonable officer in the circumstances would understand it to be an assertion of his right to remain silent. See, *U.S. v. Maisonneuve, supra* (defendant's act of shaking his head was equivocal assertion of right to remain silent); *U.S. v. Ramirez*, 79 F.3d 298 (2d Cir. 1996) (to extent that *Davis v. United States*, 512 U.S. 452, 114 S. Ct. 2350, 129 L. Ed. 2d 362 (1994), applies to the right to remain silent, defendant's nonresponse did not constitute clear request that questioning cease); *Green v. Com.*, 27 Va. App. 646, 654, 500 S.E.2d 835, 839 (1998) ("appellant's statement to the effect that he would not confess to something he did not do and that [the police detective] should 'buckle up for the long ride' did not constitute a clear and unambiguous assertion of the right to silence, even

where accompanied by appellant's turning his chair away, closing his eyes and remaining silent for two-and-one-half hours"). Thus, we reject this assigned error because Frederick did not unambiguously or unequivocally assert his right to remain silent.

## VI. CONCLUSION

We have concluded that Officer Baudler had probable cause to make the initial stop of the vehicle in which Frederick was a passenger and that the juvenile court's finding that Frederick voluntarily consented to the search of his person was not clearly erroneous. Finally, Frederick's motion to suppress statements made to Officer Baudler was properly overruled because Frederick did not unequivocally or unambiguously invoke his *Miranda* right to remain silent. For these reasons, we affirm the juvenile court's order of adjudication.

AFFIRMED.