STATE OF NEBRASKA, APPELLEE, V. CHESTER D. HERT, APPELLANT.
370 N.W.2d 166

Filed July 12, 1985.   No. 84-512.

Thomas M. Kenney, Douglas County Public Defender, and Stanley A. Krieger, for appellant.

Patrick T. O'Brien, Deputy Attorney General, and Leroy W. Sievers, for appellee.

KRIVOSHA, C.J., BOSLAUGH, WHITE, HASTINGS, CAPORALE, SHANAHAN, and GRANT, JJ.

SHANAHAN, J.

Chester D. Hert appeals his bench trial convictions of and sentences for first degree false imprisonment, Neb. Rev. Stat. § 28-314(1) (Reissue 1979), and use of a knife to commit a felony, Neb. Rev. Stat. § 28-1205(1) (Reissue 1979). We affirm.

In Omaha during the early morning of Saturday, December 31, 1983, a young couple, Christine and Douglas, were riding in Douglas' car near 24th and Leavenworth Streets where Hert was hitchhiking home. The night was cold, with ice and snow, and the couple offered Hert a ride. As the car headed toward South Omaha, Hert asked to be "left off at 22nd and M Street," his residence and a house which had been converted into apartments. Hert further identified the house by a blue porch light. When Douglas stopped his car in front of the house, Hert placed a hunting knife at Christine's throat and told Christine to come into the apartment with him or else Hert would "kill her." Douglas said he would not allow Christine to leave the automobile and tried to dissuade Hert from abducting Christine. Without indicating a destination, Hert directed Douglas to "just drive" the car. Within a few blocks as Douglas' car passed the south side police station, to attract attention Douglas deliberately drove his car into an unoccupied police cruiser parked in front of the station. After the collision Christine and Douglas immediately slipped out of the car and ran.

While Hert was afoot and chasing the couple, Christine and Douglas hailed a motorist to return them to the police station where the collision had occurred. En route to the police station, Christine and Douglas saw Hert running northeast, the direction of Hert's home in relation to the police station. Upon arrival at the police station, Christine and Douglas related the episode to Officer Thomas R. Hearty, whose cruiser moments earlier had been intentionally rammed. Officer Hearty issued a radio dispatch to any officer on patrol in the vicinity. Officer

Dean Thorsen was on cruiser patrol in the area and received the Hearty radio message, which characterized Hert's encounter with Christine and Douglas as a "robbery" and included information that Hert was "armed with a knife." The transmitted message also included the location of Hert's apartment house, the blue porch light, and a description of a male suspect with "long, blond hair" who was headed northeast from the police station toward 22d and M Streets.

Within a few minutes after receiving the radio message and without any warrant pertaining to Hert, Officer Thorsen arrived at the apartment house with the blue porch light at 22d and M Streets, where he saw a man "cutting across the front yard," and turned the cruiser's spotlight on the individual. The person in the spotlight turned out to be Frank Granados, who lived nearby. In answer to Officer Thorsen's inquiry, Granados said his dogs had barked and, upon looking out of the window of his house, Granados saw a man with long, blond hair crouched near a hedge in Granados' backyard. Granados had pursued that man and chased him into the apartment house "a few seconds" before Officer Thorsen arrived.

Approximately an hour before Officer Thorsen arrived at the apartment house, there had been a "double or triple stabbing at 24th and M Street," which was occupying police. Officer Thorsen called by radio for a "backup," walked toward the front door of the house, opened the screen door, walked onto an enclosed porch, and found the front door standing open. Thorsen did not know the layout of the apartment house. As he entered the hallway of the house, the officer noticed on the carpet "snowy footprints" leading to apartment No. 10. After the officer knocked on a few doors around apartment No. 10, a tenant from one of the other apartments appeared and informed the officer that the apartment caretaker lived upstairs. Officer Thorsen awakened the caretaker, returned to apartment No. 10 with the caretaker, and knocked on the door of apartment No. 10 while announcing "Police officers. Open the door." When there was no response from within, the officer opened the door to apartment No. 10 with the caretaker's passkey, entered the darkened room, and shined a flashlight into the corner, where he discovered Hert, who had "long,

blond, stringy hair," in bed under a sheet and looking up at the officer. Officer Thorsen told Hert to "put his hands in sight," found a wall switch for a light, turned on the light, and arrested Hert. Officer Thorsen "patted down" Hert, who was still in bed beneath a sheet and was dressed only in his "Jockey shorts." The officer could feel that Hert was very cold "to the touch" during the "patting down." At this time a police sergeant came into the room. Response by a sergeant as a backup officer was unusual and explained by the fact that other patrolmen were already occupied during this "very busy" night with the approaching holiday weekend and "bad roads" attributable to the winter weather. Handcuffs were placed on Hert. In a doorless closet in Hert's room, Officer Thorsen found snow-covered "Waffle Stompers" (boots). On the floor in the middle of the room was a pair of cold, wet blue jeans. Beneath the mattress of the bed where Hert had been lying, Officer Thorsen found a hunting knife.

Hert was taken to police headquarters where Christine and Douglas positively identified him as the knife-wielding hitchhiker-assailant. In an interview room at police headquarters, Hert was informed of the *Miranda* "rights" and signed a waiver ("Rights Advisory Form"). Hert admitted he had tried to force Christine at knife point into his apartment and also admitted threatening to kill her, as well as ordering Douglas to drive the car before the collision with the police cruiser.

Hert filed a pretrial motion to suppress "the Defendant's statement and any and all evidence taken from the Defendant's apartment," claiming that any evidence was the "fruit" of an illegal arrest. The district court found that exigent circumstances existed which warranted Officer Thorsen's entry into the apartment house without an arrest warrant for Hert. The district court found Hert's inculpatory statements were voluntary and preceded by proper warnings required by *Miranda*; Hert's boots, having been in "plain view," were admissible evidence; but the knife was inadmissible because it was under a mattress and was not "in plain view." The district court ordered the knife suppressed as evidence.

As his solitary assignment of error, Hert contends that,

because police entered his residence without an arrest warrant, articles obtained at his apartment and introduced into evidence and his inculpatory statement at police headquarters were inadmissible as products of an unlawful arrest.

The fourth amendment to the U.S. Constitution provides:

The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or Affirmation, and particularly describing the place to be searched, and the person or things to be seized.

See, also, Neb. Const. art. I, § 7.

Absent exigent circumstances, a nonconsensual, warrantless entry to arrest a person within his or her home is presumptively unreasonable and, therefore, unconstitutional. See *Payton v. New York*, 445 U.S. 573, 100 S. Ct. 1371, 63 L. Ed. 2d 639 (1980). "In terms that apply equally to seizures of property and to seizures of persons, the Fourth Amendment has drawn a firm line at the entrance to the house. Absent exigent circumstances, that threshold may not reasonably be crossed without a warrant." *Id.* at 590.

"Before agents of the government may invade the sanctity of the home, the burden is on the government to demonstrate exigent circumstances that overcome the presumption of unreasonableness that attaches to all warrantless home entries." *Welsh v. Wisconsin,* 466 U.S. 740, 750, 104 S. Ct. 2091, 80 L. Ed. 2d 732 (1984).

Consequently, in Hert's case we presume that the officer's nonconsensual and warrantless entry into Hert's home was unreasonable and examine the circumstances to ascertain whether the State has rebutted such presumption and satisfied its burden in demonstrating exigent circumstances justifying the initial entry to arrest Hert.

" '[E]xigent circumstances' means an emergency situation requiring swift action to prevent imminent danger to life or serious damage to property, or to forestall the imminent escape of a suspect or destruction of evidence." *People v. Ramey*, 16 Cal. 3d 263, 276, 545 P.2d 1333, 1341, 127 Cal. Rptr. 629, 637 (1976). See, also, *State v. Page*, 277 N.W.2d 112 (N.D. 1979);

*State v. Girard,* 276 Or. 511, 555 P.2d 445 (1976).

In the oft-cited *Dorman v. United States,* 435 F.2d 385 (D.C. Cir. 1970), there are six criteria considered in determining whether "exigent circumstances" exist, namely, (1) a grave offense is involved, particularly a crime of violence; (2) the suspect is reasonably believed to be armed; (3) a clear showing of probable cause; (4) a strong reason to believe that the suspect is in the dwelling; (5) the likelihood of escape, if not swiftly apprehended; and (6) a peaceful entry as opposed to a "breaking." See, also, *United States v. Minick,* 455 A.2d 874 (D.C. 1983).

Courts of other states have utilized the *Dorman* criteria or guidelines in determining whether "exigent circumstances" exist. See, *State v. Luloff,* 325 N.W.2d 103 (Iowa 1982); *State v. Page, supra.* However, the *Dorman* criteria are not all-inclusive and are not cardinal maxims to be rigidly applied in each case. *People v. Yates,* 98 Ill. 2d 502, 456 N.E.2d 1369 (1983); *State v. Page, supra; State v. Luloff, supra.* Rather, as expressed in 2 W. LaFave, Search and Seizure § 6.1 at 390 (1978):

> The ultimate purpose of all Fourth Amendment standards is not to keep probative evidence out of criminal trials, but rather to keep police practices within constitutional limits, and this purpose is not served by a rule which cannot be applied correctly with a fair degree of consistency by well-intentioned police officers. It is thus appropriate to ask whether the *Dorman* rule is too sophisticated to be so applied, requiring as it does the making of on-the-spot decisions by a complicated weighing and balancing of a multitude of imprecise factors.

While "exigent circumstances" have multiple characteristics, the guiding principle is reasonableness, and each case must be examined in the light of facts known to officers at the time they acted. *People v. Yates, supra; People v. Ramey, supra.* In determining whether a nonconsensual entry to arrest without a warrant is reasonable and, consequently, constitutionally permissible, fundamental considerations include probable cause to arrest and circumstances preventing an officer from obtaining an arrest warrant as a matter of practicality. See *State v. Page, supra.*

Although mentioning the *Dorman* criteria in reference to "exigent circumstances," the U.S. Supreme Court has not as yet approved the six criteria enunciated in *Dorman*. See, *Payton v. New York,* 445 U.S. 573, 100 S. Ct. 1371, 63 L. Ed. 2d 639 (1980); *Welsh v. Wisconsin,* 466 U.S. 740, 752, 104 S. Ct. 2091, 80 L. Ed. 2d 732 (1984) ("[w]ithout approving all of the factors included in the standard adopted [in *Dorman*], it is sufficient to note that many other lower courts have also considered the gravity of the offense an important part of their constitutional analysis"). While refraining from adoption of the *Dorman* criteria or guidelines, the U.S. Supreme Court has indicated other factors to be considered in determining whether a warrantless entry into a home is reasonable and constitutionally permissible; for example, *Warden v. Hayden,* 387 U.S. 294, 87 S. Ct. 1642, 18 L. Ed. 2d 782 (1967) (police, having probable cause to believe an armed robber had entered a house, had the "right" to make a warrantless entry to arrest the robber and search for weapons); *United States v. Santana,* 427 U.S. 38, 96 S. Ct. 2406, 49 L. Ed. 2d 300 (1976) ("hot pursuit" justified the warrantless entry into a suspect's house, when police have probable cause to arrest the subject and realistically expect any delay to result in destruction of evidence); and *Welsh v. Wisconsin, supra* (an important factor to be considered when determining whether any exigency exists is the gravity of the underlying offense for which the arrest is being made).

This court has not previously enunciated a standard for determining whether exigent circumstances exist and permit a nonconsensual, warrantless entry to arrest a suspect within his or her home. It is not realistic to expect law enforcement officers to run through the *Dorman* checklist and weigh variable factors in determining whether a warrantless entry is permissible. We conclude and hold that exigent circumstances exist and constitutionally justify a nonconsensual and warrantless entry in a reasonable manner to arrest a person within his or her home when a law enforcement officer has:

(1) Probable cause to believe that a suspect has committed a serious offense;

(2) A reasonable belief from a present factual basis that the suspect is in the premises to be entered; and,

(3) Immediately upon concurrence of elements (1) and (2) (probable cause and reasonable belief), a factual basis to reasonably believe that, during the time which would be necessarily consumed in obtaining an arrest warrant under existing circumstances, there will be danger to the officer or another, evidence will be removed or destroyed, or the suspect will escape. See Harbaugh and Faust, *"Knock on Any Door"—Home Arrests After Payton and Steagald*, 86 Dick. L. Rev. 191 (1982). The aforementioned criteria apply in the case of a law enforcement officer acting alone or law enforcement officers acting collectively in concert. Thus, constitutional guarantees for personal liberty and privacy are balanced against effective, but not unrestrained, law enforcement.

Applying the criteria which we have enumerated, Officer Thorsen was confronted with exigent circumstances making his warrantless entry to arrest Hert constitutionally permissible under the circumstances. The officer used a passkey to enter the apartment. Although Hert did not consent to the officer's entry, Officer Thorsen's entry was achieved in a reasonable manner. Officer Thorsen had probable cause to believe that Hert had committed a felony, in view of the incident characterized in the radio transmission as a "robbery." As a result of facts provided by witnesses, Thorsen reasonably believed that Hert, who had been reported to be armed with a knife, was inside the apartment house. It was a physical impossibility that Officer Thorsen surround the house. Surveillance was equally impractical, if not impossible, due to the depleted supply of officers otherwise occupied in police activities. "[T]he question of whether a stakeout is or is not feasible is itself a complicated one, and is unlikely to be seen by hindsight in precisely the same way it was perceived by the police on the scene." 2 W. LaFave, Search and Seizure § 6.1 at 395 (1978). Given the officer's understandable uncertainty about any restrictive features of the premises, such as existence and location of doors, windows, or other means for departure from the premises, coupled with Hert's probable flight in the event of any further delay, containment of Hert reasonably appeared unlikely. Any further delay in entry may have unnecessarily increased danger either to the officer or

occupants of the apartment house. In the exigencies of the moment, Officer Thorsen was not required to wait outside the house while an armed suspect within was free to plan an escape, actually escaped, or endangered occupants of the apartment house, or while the laws of physics caused evidence to vanish, that is, evanescence of the snow-covered, cold, and wet conditions of clothing worn by Hert as he fled the scene of the collision involving the police cruiser.

We accordingly conclude that there is no constitutional infirmity in Officer Thorsen's arrest of Hert. Evidence obtained by the officer at Hert's apartment and introduced at trial was in plain view when Hert was placed under lawful arrest. Additionally, Hert's inculpatory statements were admissible in view of preinterrogation warnings required by *Miranda* and were not the product of an unlawful arrest, the "fruit of the poisonous tree." Cf. *Wong Sun v. United States*, 371 U.S. 471, 83 S. Ct. 407, 9 L. Ed. 2d 441 (1963). Hert's statement at police headquarters was not an exploitation of an unlawful arrest. Cf. *State v. George*, 210 Neb. 786, 317 N.W.2d 76 (1982) (an unlawful arrest resulting from a warrantless intrusion into a suspect's home without consent and in the absence of exigent circumstances necessitates suppression of an inculpatory statement in temporal proximity and subsequent to the illegal arrest).

The district court correctly admitted evidence at Hert's trial. Hert's conviction and sentence are affirmed.

AFFIRMED.