STATE OF NEBRASKA, APPELLANT, V. DIANE L. MONZU, APPELLEE.
420 N.W.2d 726

Filed March 18, 1988.   No. 87-1143.

J. Patrick Kelly, Sarpy County Attorney, and John F. Irwin, for appellant.

Martin J. Kushner of Fiedler, Kushner & Pred, for appellee.

WHITE, J.

This is an appeal to one judge of the Nebraska Supreme Court by the State of Nebraska, pursuant to Neb. Rev. Stat. § 29-824 (Reissue 1985), from an order of the district court for Sarpy County suppressing evidence seized and observations made by witnesses with respect to the defendant, Diane L. Monzu.

The record shows that on May 28, 1987, shortly before 8 a.m., Agent Bernam of the Federal Bureau of Investigation and Deputy DeLaCastro, Deputy Lyle, and Sergeant Davis of the Sarpy County Sheriff's Department went to the residence of William and Diane Monzu to execute an arrest warrant. Although it was not made a part of the record, the warrant apparently named only William Monzu as the subject of the arrest. Agent Bernam knocked three separate times on the door. After the first knock, DeLaCastro observed a female look out a window of the Monzu residence and all of the officers heard what sounded like loud footsteps on a stairway. After the third knock, the door opened on its own, apparently from the force of the knock. As the officers entered the residence, William Monzu was immediately visible and was placed under arrest. Sergeant Davis heard running water coming from the upstairs area and proceeded immediately up the stairway in order to, in his words, "secure the rest of the house." Upon reaching the top of the stairs, Davis observed the defendant, Diane Monzu, in the bathroom, standing over the toilet. Davis went into the bathroom, reached into the toilet, and recovered several plastic baggies containing suspected controlled substances. Davis took

Diane Monzu to the kitchen and then phoned his superior to request a search warrant based upon his observations. Thereafter, a search warrant was issued and executed, and the plastic baggies, along with a number of other items, were seized.

The district court found that although the officers' initial entrance into the residence was reasonable pursuant to the warrant for arrest, the subsequent act of proceeding upstairs was unreasonable and violative of the defendant's rights. The court ruled that the search warrant was tainted by the initial illegal search and seizure and granted the defendant's motion to suppress.

On this appeal, the State's primary argument is that, having entered the Monzu residence lawfully to arrest William Monzu, the officers had the right to conduct a quick and cursory search of the dwelling for the presence of others who might present a security risk.

The State relies on a number of federal circuit court decisions which recognize a "security check" or "protective sweep" exception to the warrant rule and asks this court to adopt the doctrine. See, *United States v. Rich*, 518 F.2d 980 (8th Cir. 1975), *cert. denied* 427 U.S. 907, 96 S. Ct. 3193, 49 L. Ed. 2d 1200 (1976); *United States v. Briddle*, 436 F.2d 4 (8th Cir. 1970), *cert. denied* 401 U.S. 921, 91 S. Ct. 910, 27 L. Ed. 2d 824 (1971); *United States v. Bowdach*, 561 F.2d 1160 (5th Cir. 1977). The following language from *Bowdach, supra* at 1168-69, succinctly states the security check rule:

> [T]he purpose of this cursory search is to check for persons, not things, and the search is only justified when it is necessary to allow the police officers to carry out the arrest without fear of violence. The exigent circumstances presented by this reasonable fear of violence distinguishes this factual setting from *Chimel v. California*, 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969) and *Vale v. Louisiana*, 399 U.S. 30, 90 S.Ct. 1969, 26 L.Ed.2d 409 (1970) . . . .

Despite the widespread acceptance of the doctrine in the federal circuit courts, no decision of the U.S. Supreme Court supports the existence of a "security check" exception to the warrant

requirement. See *Vasquez v. United States*, 454 U.S. 975, 102 S. Ct. 528, 70 L. Ed. 2d 396 (1981) (Justice Brennan, with whom Justice White and Justice Marshall join, dissenting from the denial of certiorari).

In the instant case, the district court judge appeared to have the security check rule in mind when he said, at the hearing on the motion to suppress, "[I]t's hard for the Court to understand how the safety of the officer is concerned with running up the stairs. Safety is staying downstairs and not going up that far." The judge clearly did not feel that there was an objective basis for the officer's decision to conduct a security check.

In reviewing the trial court's ruling on a motion to suppress, the Supreme Court will uphold the trial court's findings of fact unless those findings are clearly erroneous. *State v. Copple*, 224 Neb. 672, 401 N.W.2d 141 (1987). On these facts it is unnecessary to determine the wisdom of either accepting or rejecting the security check doctrine as it has been fashioned in the federal circuit courts. The trial court's finding that Sergeant Davis acted unreasonably is not clearly erroneous. Thus, even if this court were to accept the security check doctrine, the State's case would fail to meet the burden of proving that the search was warranted. The arrest in this case could have been safely conducted without further intrusion into the home. William Monzu was found near the door as the officers entered and was immediately secured. At that time the reason for the officers' presence ceased and Monzu should have been removed from the premises. The State's first contention is without merit.

The State's second contention is that Sergeant Davis had reason to believe that narcotics were present and in danger of being removed or destroyed, and that in such an exceptional circumstance the warrantless search and seizure was justified. The State, however, cites no objective facts which would have led Davis to believe that narcotics were present and being destroyed. This argument contradicts the State's first argument and also contradicts Sergeant Davis' testimony that the reason for going upstairs was to ensure safety and that his action would have been the same regardless of the fact that he heard water running. It is therefore unnecessary to determine whether the probability of narcotics' being destroyed constitutes an

exceptional circumstance allowing a warrantless search.

The State's final assignment of error is premised on the validity of its first contention and is therefore without merit. The order of the district court is affirmed.

AFFIRMED.