STATE OF NEBRASKA EX REL. RICHARD T. BELLINO, APPELLEE
AND CROSS-APPELLANT, V. SCOTT MOORE,
SECRETARY OF STATE OF NEBRASKA, APPELLEE AND
CROSS-APPELLANT, AND JOHN W. BLACKHAWK ET AL.,
INTERVENORS-APPELLANTS AND CROSS-APPELLEES.

576 N.W. 2d 793

Filed April 3, 1998.   No. S-96-1121.

Robert B. Crosby, of Crosby, Guenzel, Davis, Kessner & Kuester, and Mark A. Hubble, of Dorsey and Whitney, L.L.P., for intervenors-appellants.

Vince M. Powers for relator.

Michael F. Coyle, Special Assistant Attorney General, and Michael L. Schleich, of Fraser, Stryker, Vaughn, Meusey, Olson, Boyer & Bloch, P.C., for appellee Moore.

WHITE, C.J., CAPORALE, WRIGHT, CONNOLLY, GERRARD, STEPHAN, and McCORMACK, JJ.

CAPORALE, J.

## I. STATEMENT OF CASE

The relator-appellee and cross-appellant, Richard T. Bellino, seeks a declaration that the requirements for signatures of registered voters on petitions to place a measure on a ballot through the initiative process, as contained in Neb. Rev. Stat. § 32-1409(1) (Cum. Supp. 1996), are unconstitutionally vague on their face and as applied by the respondent-appellee and cross-appellant, Scott Moore, Secretary of State of Nebraska. The relator further prays that the secretary be compelled to

place a gambling measure on the ballot. The appellants, John W. Blackhawk, Lance Gregory Morgan, and Erin Christian Morse, intervened and aligned themselves with the secretary. The district court found the questioned statute unconstitutional and ordered that the secretary determine the sufficiency and validity of the signatures in accordance with prior law and place the measure on the ballot at a future general election if all constitutional and other requirements have been met. As the case questions the constitutionality of a statute, the secretary appealed directly to this court under the provisions of Neb. Rev. Stat. § 24-1105 (Reissue 1995), asserting, in summary, that the district court erred in ruling § 32-1409(1) unconstitutional. The relator has cross-appealed, asserting, in summary, that the district court erred in failing to (1) find that the secretary wrongly determined the number of signatures required, (2) find that the requisite number of valid signatures had been obtained, and (3) order the measure placed on the ballot at the 1996 general election or, in the alternative, order that a special election be held. For the reasons hereinafter set forth, we reverse, and remand with the direction that the cause be dismissed.

## II. SCOPE OF REVIEW

The dispositive issues present questions of law, in connection with which we are obligated to reach a conclusion independent of the determinations reached by the trial court. *Betz v. Betz, ante* p. 341, 575 N.W.2d 406 (1998); *Hall v. Progress Pig, Inc., ante* p. 150, 575 N.W.2d 369 (1998).

## III. FACTS

The relator, a resident of Sarpy County, is a member of an association known as Citizens for Local Option and Control Committee. The committee was formed by an association of keno operators in April 1996 for the purpose of placing on the ballot for the November 5, 1996, general election through the initiative process a measure entitled "The Initiative to Preserve Nebraska Assets and Live Horse Racing."

Upon receipt of initiative petitions, the secretary, in accordance with law, delivered them to the election commissioners and clerks of each county for verification of each signature. See

§ 32-1409(1). When performing the verification procedures, county officials are required to compare the signer's printed name; street and number, or voting precinct; city, village, or post office address; and signature with voter registration records to determine if the signer is a registered voter. *Id.* The signature is presumed to be valid only if all of these items match. *Id.*

As required, the county officials compared the signature of each person signing a petition with the county voter registration records to determine whether each signer was registered as a voter on or before the date on which the petition was required to be filed with the secretary, July 5, 1996. See, Neb. Const. art. XVII, § 4; Neb. Rev. Stat. § 32-1407(1) (Cum. Supp. 1996); § 32-1409(1). The county officials were further required to certify their results to the secretary within 40 days after their receipt of the petitions. See § 32-1409(2). The secretary was then required to determine the total number of valid signatures and determine whether the constitutional and statutory requirements have been met. See § 32-1409(3). The secretary was also required to notify the person filing the initiative petition of the result. See *id.* The secretary sent the signatures to be verified on July 15. The county officials began returning them to the secretary by about August 1.

In order to qualify for the ballot, a petition to amend Nebraska's Constitution must be signed by 10 percent of the registered voters of the State of Nebraska. Neb. Const. art. III, § 2. On July 5, 1996, the secretary certified that 98,939 signatures constituted 10 percent of the registered voters. The committee submitted 133,100 petition signatures, of which 87,524 were determined to be valid by the county officials. On September 4, the committee was notified by the secretary that its initiative petitions did not contain a sufficient number of valid signatures to be placed on the ballot.

The findings of county officials as to the validity or invalidity of petition signatures may be rebutted by any credible evidence that the secretary finds sufficient. § 32-1409(1).

On or about September 6, 1996, the secretary's office explained to the committee the procedures they might use to rehabilitate invalidated signatures. For example, some signatures were originally invalidated when petitions contained the

signers' ZIP codes, but not their towns. The secretary determined that those signatures would be counted as valid if petition supporters brought him petitions which had the ZIP codes on them but no towns, since ZIP codes are credible evidence of the towns where the signers resided.

In addition, some signatures were invalidated because the address shown on the petition was different from the address shown on the voter registration record. The secretary determined that those signatures would be validated if the signer would provide a letter stating that the signer was the person who signed the petition, that the signer had moved from one address to another, and that the signer had never moved from the county in which the signer was registered.

By statute, the secretary was required to certify to the counties by September 13, 1996 (at least 50 days before the election), the issues which would be on the ballot. See Neb. Rev. Stat. § 32-801 (Cum. Supp. 1996). The secretary concluded that he had no authority to place matters on the ballot after September 13. Initially, the secretary set a deadline of September 11 for petition opponents and proponents to submit evidence on the validity of signatures. This deadline was later moved to 9 a.m. on September 12.

The only attempt the committee made with the secretary to rehabilitate any of the invalidated signatures was to submit a statistical analysis to the effect that approximately 9,482 of the invalidated signatures were valid. The secretary rejected the analysis as an improper means by which to rehabilitate signatures and declined to place the constitutional amendment proposed by the committee on the ballot.

### IV. SECRETARY'S CROSS-APPEAL

Section 32-1409(1) reads, in relevant part:

> The signature and address shall be presumed to be valid only if the election commissioner or county clerk finds the printed name, street and number or voting precinct, and city, village, or post office address to match the registration records and that the registration was received on or before the date on which the petition was required to be filed with the Secretary of State. The finding of the

election commissioner or county clerk may be rebutted by any credible evidence which the Secretary of State finds sufficient.

Concluding that the foregoing statute hindered rather than facilitated the initiative process, the district court ruled that it violates Neb. Const. art. III, § 4, which provides that "[t]he provisions with respect to the initiative . . . shall be self-executing, but legislation may be enacted to facilitate their operation."

Neb. Rev. Stat. § 32-1412 (Cum. Supp. 1996) provides that if the secretary refuses to place on the ballot any measure proposed by an initiative petition, any resident may apply to the district court for Lancaster County for a writ of mandamus. In *Duggan v. Beermann*, 249 Neb. 411, 544 N.W.2d 68 (1996), we explicitly held under a prior codification of § 32-1412, Neb. Rev. Stat. § 32-704(2) (Reissue 1993), that a prayer for injunctive relief based on the legal insufficiency of the initiative petition could be joined with a prayer for declaratory relief based on the unconstitutionality of the ballot measure. See, also, *Duggan v. Beermann*, 245 Neb. 907, 515 N.W.2d 788 (1994) (permitted without analysis or comment joining of prayer for injunctive relief based on insufficiency of signatures with prayer for declaration that measure unconstitutional).

However, in both of those cases, it was the constitutionality of the ballot measure which was at issue. Thus, there was no inconsistency in questioning the means by which the measure came to be on the ballot and questioning as well the constitutional validity of the measure. Here, it is the constitutionality of § 32-1409(1) which is at issue, the very statute under which the committee sought to rehabilitate the signatures which had been rejected.

It is axiomatic that a litigant who invokes the provisions of a statute may not challenge its validity or seek the benefit of such statute and in the same action and at the same time question its constitutionality. *State ex rel. Sileven v. Spire*, 243 Neb. 451, 500 N.W.2d 179 (1993); *In re Dissolution of School Dist. No. 22*, 216 Neb. 89, 341 N.W.2d 918 (1983). Accordingly, the relator cannot challenge the constitutionality of § 32-1409(1), as it is the statute invoked in an effort to persuade the secretary to rehabilitate signatures which had been rejected.

For that reason, the district court erred in considering the constitutionality of § 32-1409(1), and its pronouncements in that regard are a nullity.

## V. RELATOR'S CROSS-APPEAL

We thus reach the relator's cross-appeal.

### 1. NUMBER OF SIGNATURES

The relator first complains that the district court erred in failing to find that the secretary wrongly determined that a total of 98,939 valid signatures were required.

In order to determine how many registered voters there were in Nebraska at the relevant date, the secretary asked the county election officials to provide the number of registered voters in their respective counties at the close of business on July 5, 1996, the date by which the petitions were due to be turned in to him. See § 32-1407(1) (petitions due 4 months prior to general election).

Relator argues that the number set by the secretary was too high because it included so-called "inactive" registrants, that is, those registered but for whom the county election official had received information that they had moved. Such registrants are not removed from the voter rolls because some of the information is inaccurate and because removal requires additional confirmation that the registrant has in fact moved, as provided in Neb. Rev. Stat. § 32-326 (Cum. Supp. 1996).

The term "registered voter" is statutorily defined as "an elector who has a current voter registration record on file with the election commissioner or county clerk in the county of his or her residence." Neb. Rev. Stat. § 32-115 (Cum. Supp. 1996). Thus, the relator's position that inactive voters do not have current registration records and should not be counted as voters is without merit, and the secretary's determination as to the number of signatures required has not been shown to be wrong.

### 2. ADEQUACY OF VALID SIGNATURES

In contending that the district court incorrectly concluded that an inadequate number of valid signatures had been submitted, the relator argues that the random statistical sampling provided by the committee to the secretary should have been con-

sidered as credible evidence sufficient to rebut the determinations of invalidity made by the county clerks and election commissioners. This is a legal determination that must be made independently of the factual question of whether the evidence submitted is valid.

. The relator points out that the use of random statistical sampling has been specifically upheld by the California Supreme Court in *Brosnahan v. March Fong Eu*, 31 Cal. 3d 1, 641 P.2d 200, 181 Cal. Rptr. 100 (1982). However, *Brosnahan* is not applicable because the California Elections Code mandates random sampling for the verification of signatures on petitions. Our statute contains no such provision, but, rather, leaves the determination of what constitutes credible evidence to the discretion of the secretary.

Section 32-1409(1) requires that "the signature and address" be examined by the county election officials. Since it is the findings as to the invalidity of individual signatures which may be rebutted to the secretary, the finding of invalidity could not be rebutted by the use of random statistical sampling.

### 3. MEASURE NOT ON BALLOT

In the absence of the requisite number of valid signatures, there was no basis on which the district court could have ordered the measure placed on any ballot, past or future.

### 4. CONCLUSION

For the foregoing reasons, there is no merit to the relator's cross-appeal.

### VI. JUDGMENT

As first noted in part I, the judgment of the district court is reversed and the cause remanded with the direction that it be dismissed.

REVERSED AND REMANDED WITH DIRECTION.