STATE OF NEBRASKA, APPELLEE, V.
STANLEY W. BEEKEN, SR., APPELLANT.
STATE OF NEBRASKA, APPELLEE, V.
STANLEY W. BEEKEN, JR., APPELLANT.
585 N.W.2d 865

Filed August 4, 1998. Nos. A-97-879, A-97-880.

Rae Ann Schmitz for appellants.

Don Stenberg, Attorney General, and Mark D. Raffety for appellee.

MILLER-LERMAN, Chief Judge, and HANNON and IRWIN, Judges.

HANNON, Judge.

A neighbor and a police officer smelled the odor of burning marijuana coming from the duplex of Stanley Beeken, Sr. (Beeken), and Stanley Beeken, Jr. This led to an investigation that resulted in Beeken and Beeken, Jr., both being convicted of possession of drug paraphernalia, in violation of Neb. Rev. Stat. § 28-441 (Reissue 1995), an infraction, with the first offense penalty being a fine of not more than $100. Beeken, Jr., was also convicted of possession of less than 1 ounce of marijuana, second offense, in violation of Neb. Rev. Stat. § 28-416 (Reissue 1995), the penalty for which is a fine of $200 and possible imprisonment not to exceed 5 days. The Beekens allege that the county court erred in refusing to suppress evidence obtained by a search of their residence because the police officer's entry into the house before a warrant was applied for was neither a protective sweep nor justified by exigent circumstances. The Beekens argue that the search warrant later obtained was a product of the illegal entry and not supported by probable cause. The Beekens allege that the district court erred in affirming the county court's judgments and sentences. We conclude that even if the warrantless search was illegal, the police officer's detection of the odor of burning marijuana was probable cause for a search warrant of the home and that under the independent source doctrine, the evidence seized pursuant to the warrant was admissible and sufficient to support the convictions. We affirm.

## FACTUAL BACKGROUND

On February 23, 1996, at approximately 4:17 p.m., Sgt. Dwight Pruss of the Sidney Police Department received an anonymous telephone call. The caller told Pruss her address, that she lived in a duplex, and that "there had been quite a bit of stop and go traffic [at the adjoining duplex] the last few days between the hours of 2:30 and 4:30 . . . ." The caller stated that she smelled the odor of marijuana coming from a doorway shared by the two duplexes.

Officer Keith A. Andrew of the Sidney Police Department testified that he was an experienced narcotics investigator.

Andrew testified in person, but his affidavit that was part of the application for the search warrant was introduced and used as evidence of the facts it contained. The court allowed Andrew to be cross-examined on the information in the affidavit. The parties treated the affidavit as part of Andrew's direct testimony, and no error is assigned with regard to this procedure. Summarizing Andrew's testimony is difficult unless the information in the affidavit is treated as part of his direct testimony, and we shall do so.

On February 23, 1996, Andrew went to the address given by the caller. He found that a doorway connected the caller's duplex with the adjoining duplex. Andrew did not smell anything coming from the duplex upon arrival. Andrew then knocked on the door of the duplex adjoining the caller's duplex. Beeken answered the door, stepped outside at Andrew's request, and closed the door behind him. Andrew could smell a strong odor of burning marijuana as the screen door shut behind Beeken. Andrew advised Beeken of the report received by the police department. He then asked Beeken if anyone had been smoking marijuana in the duplex. Andrew testified that Beeken replied "not to his knowledge" and told Andrew that he had just returned from work. Andrew advised Beeken that Andrew could presently smell the odor of burning marijuana and asked if he could search the duplex. Beeken stated he would have to check with his son, Beeken, Jr., and returned to the residence. A few minutes later, Beeken came out of the duplex, and Andrew again asked permission to search the residence. Beeken stated he could not give permission to search the residence until he contacted his "roommate." Andrew then informed Beeken that if Andrew did not obtain consent to search, he intended to secure the occupants and contact the county attorney's office to obtain a search warrant. Beeken said he would again attempt to call his roommate and returned inside the duplex. Andrew testified that at that time, he thought someone was, or recently had been, smoking marijuana in the duplex.

After Beeken went inside, Andrew heard what sounded like a door slamming and observed the shadow of someone running or moving very quickly to the back of the duplex. Andrew jumped off the porch, ran to the rear of the duplex, and observed a man

he knew as Zachary Rauner stuffing something into his pocket. Andrew testified that Rauner stated, " '[I]t's mine and I'll give it to you, I was leaving so nobody would get in trouble.' " Andrew patted Rauner down, found two marijuana pipes and a wooden case, and arrested Rauner.

After arresting Rauner, Andrew began knocking on the door of the Beeken duplex. Andrew testified that he continued knocking but that no one answered the door for approximately 5 minutes. When Beeken eventually answered the door, Andrew advised him that all occupants needed to exit the residence, as Andrew was securing the premises and attempting to obtain a search warrant. Beeken, Beeken, Jr., and Dennis Peters exited the duplex. Andrew stated that Beeken, Jr., and Peters both had very red eyes and that based on his training and experience, he believed they were under the influence of narcotics. The occupants of the duplex were "secured and patted down." The county attorney and deputy county attorney arrived and directed the police to "secure the premise and to meet them at their office for a search warrant affidavit."

Andrew and a Trooper Pleiss of the Nebraska State Patrol then performed a "protective sweep" to "make sure nobody else was inside the house continuing to destroy evidence as we were leaving to go get an affidavit completed." Andrew testified that while he observed no persons inside the duplex, he did observe a "small silver colored roach clip, with suspected marijuana residue, in the upstairs bedroom to the southwest corner . . . ." The police did not seize any evidence in the sweep but used the discovery of the roach clip in the affidavit for the search warrant.

An application and affidavit for a warrant to search the Beeken residence was prepared. That document is in evidence. Andrew testified that after obtaining a search warrant, the police searched the Beeken residence and seized a ceramic ashtray, a small wooden bowl with a rolled-up baggie in it, a pipe bowl off a marijuana pipe, and a marijuana roach clip. The warrant was not introduced at either the motion to suppress hearing or the trial, but without objection, Andrew testified that he obtained a search warrant before entering the second time and searching the residence. The Beekens' attorney argues that the search warrant was not validly issued but does not contend

that a warrant was not issued. We shall therefore assume that a search warrant was issued pursuant to the application and affidavit that are in evidence. However, we shall consider whether the warrant should have been issued.

Beeken and Beeken, Jr., filed identical motions to suppress any statements made or property seized. The Beekens alleged any property seized was obtained in violation of the "Fourth and Fourteenth and First Amendments to the United States Constitution, and the Constitution of the State of Nebraska." Both motions to suppress were overruled.

The trial consisted of Andrew's testimony and the introduction of the above-described items seized during the search pursuant to the warrant. The Beekens' counsel preserved the objection raised by the motions to suppress. A forensic drug chemist testified to establish the required presence of marijuana, and the sufficiency of proof in that respect is not questioned. The Beekens were convicted. The county court ordered Beeken, Jr., to pay a fine of $300 plus court costs and ordered Beeken to pay a fine of $100 plus court costs. The district court affirmed the county court's orders, and the Beekens appeal to this court.

## ASSIGNMENTS OF ERROR

The Beekens assign as error that the county court erred in overruling the motions to suppress and that the district court erred in affirming the county court's judgments and sentences, because the facts contained in the affidavit for the search warrant were insufficient to support a finding of probable cause.

## STANDARD OF REVIEW

A trial court's ruling on a motion to suppress, apart from determinations of reasonable suspicion to conduct investigatory stops and probable cause to perform warrantless searches, is to be upheld on appeal unless its findings of fact are clearly erroneous. *State v. Merrill*, 252 Neb. 510, 563 N.W.2d 340 (1997). In making this determination, an appellate court does not reweigh the evidence or resolve conflicts in the evidence, but, rather, recognizes the trial court as the finder of fact and takes into consideration that it observed the witnesses. *State v. Chitty*, 253 Neb. 753, 571 N.W.2d 794 (1998).

In ruling on a motion to suppress, determinations of reasonable suspicion and probable cause are reviewed de novo, and an appellate court reviews the trial court's findings of fact, giving due weight to the inferences drawn from those facts by the trial judge. *State v. Chitty, supra.*

With respect to questions of law, an appellate court is obligated to reach a conclusion independent of the determinations reached by the trial court. *State ex rel. Bellino v. Moore*, 254 Neb. 385, 576 N.W.2d 793 (1998); *Hall v. Progress Pig, Inc.*, 254 Neb. 150, 575 N.W.2d 369 (1998).

## ANALYSIS

*Application and Affidavit for Search Warrant.*

■ The Beekens maintain the affidavit for the warrant was insufficient, because some of the facts contained therein were legally or factually irrelevant or illegally obtained. The affidavit contains statements about the neighbor's telephone call that initially caused the police to investigate the Beekens. The Beekens argue that the affidavit does not contain information to establish the neighbor's reliability. The Beekens argue that the neighbor does not qualify as a citizen informant. The Nebraska Supreme Court has stated:

> Among the ways in which the reliability of an informant may be established are by showing in the affidavit to obtain a search warrant that (1) the informant has given reliable information to police officers in the past [citation omitted]; (2) the informant is a citizen informant [citation omitted]; (3) the informant has made a statement that is against his or her penal interest [citation omitted]; and (4) a police officer's independent investigation establishes the informant's reliability or the reliability of the information the informant has given . . . .

*State v. Utterback*, 240 Neb. 981, 988, 485 N.W.2d 760, 768 (1992).

We think the reliability of the neighbor informant is established in the warrant affidavit by more than one method. Although the informant would not give her name, the affidavit shows that she was a person who observed what she believed to be criminal activity and that she then openly informed the

police. The neighbor was a citizen informant. See *State v. Duff*, 226 Neb. 567, 412 N.W.2d 843 (1987). The neighbor gave her address, thus establishing she lived in the same duplex as the persons whose conduct she was informing upon. It seems to us that in our society, a person is less likely to incorrectly accuse a neighbor of criminal activity than just any citizen. Furthermore, the affidavit shows the police went to the address given to them by the informant and smelled the same odor the Beekens' neighbor reported. This satisfies the fourth method of establishing the informant's reliability. More importantly, the information obtained, whatever its source, justified Andrew's knocking on the Beekens' door to inquire. At that point, the police had first-hand knowledge that a strong smell of burning marijuana was coming from the Beeken residence. In his affidavit, Andrew stated that his training and experience enabled him to detect the odor of marijuana. As explained later, the smell of fresh marijuana smoke coming from a residence would justify a search warrant. Therefore, once Andrew lawfully smelled the marijuana, the neighbor's information is largely cumulative, and any weakness the neighbor's information might have possessed becomes immaterial. In addition, the only uncorroborated fact disclosed by the informant in the affidavit was that there had been a lot of stop-and-go traffic for the past few days.

The Beekens also argue that Rauner's possession of drug paraphernalia provided no rational basis for a search inside the Beeken home. We agree this information would not justify the search, but it is clearly relevant information to strengthen the State's request for a search warrant. In short, the apprehension of Rauner with the drug paraphernalia as he ran from the Beeken home tends to corroborate the neighbor's information and the odor perceived by Andrew.

*Validity of Initial Entry.*

The Beekens maintain that "items" observed during a warrantless entry were improperly used to obtain the warrant. In his affidavit, Andrew described the "protective sweep" that he and Pleiss made of the Beeken residence and stated that they observed, but did not remove, the roach clip in the upstairs bedroom. The Beekens do not identify the items, but we assume

they refer to the roach clip, because that is the only item mentioned in the affidavit that was seen by the police.

■ The officers entered the residence, without a warrant, to secure the premises when the information they possessed would justify probable cause to believe an infraction was or had been committed, but no more. In its brief, even the State does not attempt to justify the entry as a protective sweep but seeks to justify it on the basis that it was necessary to prevent the destruction of evidence.

> It is a basic principle of fourth amendment law that searches and seizures inside a home without a warrant are presumptively unreasonable, and that a search or seizure carried out . . . without a warrant is per se unreasonable unless the police can show that it falls within one of the carefully designated exceptions based on the presence of "exigent circumstances."

*State v. Weible*, 211 Neb. 174, 179, 317 N.W.2d 920, 923 (1982). See, *State v. Resler*, 209 Neb. 249, 306 N.W.2d 918 (1981); *State v. Patterson*, 192 Neb. 308, 220 N.W.2d 235 (1974). Andrew's claim that the entry was a protective sweep to look for persons inside is unjustified, because there was no indication that the persons in the house were or had been violent.

*Exigent Circumstances.*

■ We next consider whether exigent circumstances existed to justify the officers' initial warrantless entry into the residence. A police officer who has obtained neither an arrest warrant nor a search warrant cannot make a nonconsensual and warrantless entry into a suspect's home in the absence of exigent circumstances. *State v. Plant*, 236 Neb. 317, 461 N.W.2d 253 (1990); *State v. Valdez*, 5 Neb. App. 506, 562 N.W.2d 64 (1997). The Nebraska Supreme Court has defined exigent circumstances to mean " 'an emergency situation requiring swift action to prevent imminent danger to life or serious damage to property, or to forestall the imminent escape of a suspect or *destruction of evidence*.' " (Emphasis supplied.) *State v. Hert*, 220 Neb. 447, 451, 370 N.W.2d 166, 170 (1985). The burden is on the State to demonstrate exigent circumstances that overcome the presumption of unreasonableness that attaches to all warrantless home entries. *Id.*

The Beekens argue that "[t]he mere fact that persons are inside with evidence of a destructible nature is no basis for a warrantless search." Brief for appellants at 17. However, the Nebraska Supreme Court has recognized that the destruction of evidence may be an exigent circumstance. See, *State v. Monzu*, 227 Neb. 902, 420 N.W.2d 726 (1988) (refusing to determine whether probability of narcotics' being destroyed constitutes exceptional circumstance allowing warrantless search because State cited no objective facts which would have led police officer to determine narcotics were present and being destroyed); *State v. Bishop*, 224 Neb. 522, 399 N.W.2d 271 (1987) (reiterating rule that warrantless entry is valid if police officer enters under exigent circumstances such as hot pursuit or imminent destruction of evidence); *State v. Weible, supra* (listing destruction of evidence as exigent circumstance); *State v. Resler, supra* (stating that exigent circumstances exist when evidence is located in place or under such conditions that it is likely to be destroyed while warrant is sought); *State v. Patterson, supra* (stating that exigent circumstances exist where information in possession of police leads to conclusion that felony is being committed in residence and there is great likelihood that evidence will be destroyed or removed before warrant can be obtained).

Under certain circumstances, the preservation of evidence can be an exigent circumstance. But when the only three persons known to have been in the house (after a fourth had left the house on his own) exited immediately upon the officer's request and the entry was not made until the county attorney was notified and arrived some time later, a claim that the entry was made to preserve evidence is at least subject to question.

Furthermore, the only offenses the officers had probable cause to believe were being committed in the house at the time of the entry were infractions, which are punishable by a fine of not more than $100. See, § 28-416(13)(a); § 28-441; Neb. Rev. Stat. § 29-436 (Reissue 1995). In *Welsh v. Wisconsin*, 466 U.S. 740, 104 S. Ct. 2091, 80 L. Ed. 2d 732 (1984), a man accused of an offense similarly classified by Wisconsin law was determined to have been illegally arrested in his home upon the claim of police that they needed to do so to preserve evidence.

It is difficult to read *Welsh* without concluding that exigent circumstances cannot exist when the police have only probable cause to believe an infraction has been committed. The *Welsh* Court thought that the offense of driving under the influence, which the police had probable cause to believe the defendant committed, should have been subject to a greater penalty but concluded that the Court was bound by the fact Wisconsin law provided only a $200 fine for that crime (first offense). The Court concluded that a warrantless entry by police to preserve evidence was not justified when faced with a noncriminal, civil forfeiture offense. The penalty for the offense in the case at hand is quite similar. We therefore conclude that the entry into the Beeken residence to prevent the destruction of evidence before the warrant was issued was even more questionable. However, for the reasons discussed below, we conclude that we need not decide the validity of the sweep through the home which the officers made without the warrant.

*Validity of Search Warrant.*

 "In evaluating the validity of a search warrant, the duty of a reviewing court is to ensure that the magistrate issuing the warrant had a substantial basis for determining that probable cause existed." *State v. Swift*, 251 Neb. 204, 208, 556 N.W.2d 243, 247 (1996). "Probable cause means a fair probability that contraband or evidence of a crime will be found." *Id.* "In evaluating the showing of probable cause necessary to support the issuance of a search warrant, only the probability, and not a prima facie showing, of criminal activity is required." *Id.*

The affidavit used to obtain the warrant contains essentially the same facts as summarized above. The significant and controlling fact is that Andrew legally knocked on the Beekens' front door and that in the course of that conduct, he "detected the strong odor of burning marijuana." The weight of such evidence toward probable cause has been frequently litigated:

> One type of case is that in which the officer relies primarily upon his sense of smell in concluding that an illegal substance is present. At least since the Supreme Court decision in *Johnson v. United States*, it has been clear that probable cause may be established in this fashion. . . .

. . . In *Johnson* the odor which was distinctive to the agents experienced in narcotics enforcement was that of burning opium.

Most of the recent cases have dealt with marijuana. It appears to be generally accepted that the smell of marijuana in its raw form or when burning is sufficiently distinctive to come within the rule of the *Johnson* case.

2 Wayne R. LaFave, Search and Seizure, a Treatise on the Fourth Amendment, § 3.6(b) at 290 (3d ed. 1996).

The affidavit establishes that Andrew was an experienced police officer, who had been assigned to the Western Nebraska Intelligence and Narcotics Group for 2 years and who could detect the odor of burning marijuana. In this case, Andrew's firsthand information was enough for probable cause under *Johnson v. United States*, 333 U.S. 10, 68 S. Ct. 367, 92 L. Ed. 436 (1948). The information supplied by the neighbor, Rauner's flight, his apprehension, and the discovery of drug paraphernalia upon him after Andrew told Beeken he smelled the odor of burning marijuana adds strength to Andrew's observation of burning marijuana, but such additional information is not necessary.

■ Counsel for the Beekens cites *People v Hilber*, 403 Mich. 312, 269 N.W.2d 159 (1978). That case is inapplicable because it involves a warrantless search of a motor vehicle. *Johnson, supra*, clearly stands for the proposition that the smell of a controlled substance does not justify a warrantless search but can be probable cause for a search warrant. We thus recognize that the smell of burning marijuana by a qualified person would not justify a search without a warrant but that it can be probable cause to obtain a warrant. The affidavit establishes probable cause.

*Illegal Entry's Effect on Validity of Warrant.*

■ The affidavit for the warrant contained information about the possibly illegal entry and recited the fact that the roach clip had been observed during that entry. Beekens' counsel argues the fact that the item observed during the entry was used in the affidavit to obtain the warrant makes the warrant invalid. Based on *State v. Guilbeault*, 214 Neb. 904, 336 N.W.2d 593 (1983), when an affidavit for a search warrant contains lawfully obtained facts sufficient to establish probable cause, the

fact that the affidavit also contains illegally obtained facts does not invalidate the warrant. This was clearly the rule until *Murray v. United States*, 487 U.S. 533, 108 S. Ct. 2529, 101 L. Ed. 2d 472 (1988), but we must consider whether *Murray* changed this rule.

In *Murray*, the Court recognized that the exclusionary rule prohibits the introduction of evidence, both tangible and intangible, that is, the product of, or otherwise acquired as an indirect result of, an illegal search up to the point at which the connection with the effect of the unlawful search dissipates. The *Murray* Court recognized that the independent source doctrine allows the admission of legally obtained evidence, notwithstanding the fact that the government had previously obtained illegal evidence, provided the lawful evidence was genuinely obtained independently of the illegal evidence. The Court stated:

> The ultimate question, therefore, is whether the search pursuant to warrant was in fact a genuinely independent source of the information and tangible evidence at issue here. This would not have been the case if the agents' decision to seek the warrant was prompted by what they had seen during the initial entry, *or if information obtained during that entry was presented to the Magistrate and affected his decision to issue the warrant.*

(Emphasis supplied.) 487 U.S. at 542. This decision was recognized and applied in *State v. Jurgens*, 235 Neb. 103, 454 N.W.2d 280 (1990).

In both *Murray* and *Jurgens*, the question was whether the agent's decision to obtain a warrant was prompted by the initial illegal entry. Both courts concluded that they could not determine whether the illegal search had any effect in producing the warrant and returned the case to the trial court for a determination of that question. In the case at hand, we are concerned with questions raised by the emphasized sentence in the last quote, that is, whether because information obtained during an entry which is possibly illegal was included in the affidavit for the warrant makes the evidence obtained by the warrant independent of the illegal entry because there is no evidence to establish the issuing magistrate was not affected.

■ We can find no post-*Murray* Nebraska cases which consider the question and only three federal cases that consider this issue after *Murray* was decided. They are: *U.S. v. Restrepo*, 966 F.2d 964 (5th Cir. 1992), *cert. denied* 506 U.S. 1049, 113 S. Ct. 968, 122 L. Ed. 2d 124 (1993); *U.S. v. Herrold*, 962 F.2d 1131 (3d Cir. 1992), *cert. denied* 506 U.S. 958, 113 S. Ct. 421, 121 L. Ed. 2d 344; and *U.S. v. Gillenwaters*, 890 F.2d 679 (4th Cir. 1989). In all three cases, the affidavit used to obtain the warrant contained information obtained by an illegal search. In *Gillenwaters*, the district court concluded that although an affidavit contains tainted information, it could still support a finding of probable cause if the tainted information is excised. The Fourth Circuit ignored the above-emphasized sentence from *Murray, supra*, and stated the district court's action comported with the admonition in *Murray* that "while the government should not profit from its illegal activity, neither should it be placed in a worse position than it would otherwise have occupied." 487 U.S. at 542. In *Herrold, supra*, and *Restrepo, supra*, the trial courts had followed the literal meaning of the above-quoted sentence and suppressed the evidence because the warrants contained illegal evidence. In *Herrold, supra*, the Third Circuit reviewed *Murray* and observed, among other things, that the only way the government could prove that the tainted information did not affect the issuing magistrate's decision would be to produce the issuing judge as a witness. The court concluded the government need only prove that a neutral magistrate would have issued the warrant based on the untainted information in the affidavit. In *Restrepo*, 966 F.2d at 969, the district court similarly interpreted *Murray*, and the Fifth Circuit acknowledged that interpretation was "facially consistent with Justice Scalia's statement in *Murray*." The Fifth Circuit reversed the district court's ruling on that point, saying:

Nothing in *Murray*—other than perhaps the unfortunate sentence fragment in dispute here—indicates that the Supreme Court intended to reject the prevailing *Franks*-inspired rules. The relevant phrase ("affected his decision to issue the warrant"), almost certainly was simply a paraphrase—albeit a confusing one when considered noncontextually—of the approach long sanctioned in the circuits.

966 F.2d at 970. The *Restrepo* court stated that in all such cases, the trial court "should consider whether the warrant affidavit, once purged of tainted facts and conclusions, contains sufficient evidence to constitute probable cause for issuance of the warrant." *Id.*

In the case at hand, the information obtained before the search warrant was served, that is, the existence of the roach clip in an upstairs bedroom, was so insignificant and so unnecessary to establish probable cause that it is clear the warrant would have been issued absent such information. Since the evidence clearly and undisputedly shows the police had determined to apply for a warrant before the entry and that the entry was made, there is no other issue to address, as recognized by *Murray*. The discovery of the roach clip clearly is not the cause of the issuance of the search warrant. Accordingly, we find the trial court correctly denied the Beekens' motions to suppress, and we affirm the trial court's judgments and sentences.

AFFIRMED.