**F I L E D**

**UNITED STATES COURT OF APPEALS**

**December 20, 2005**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

 Plaintiff - Appellee,

v.

LAMAR A. MORGAN,

 Defendant - Appellant.

No. 05-3091
(D.C. No. 04-CR-20016-01-CM)
(D. Kan.)

**ORDER AND JUDGMENT**[*]

Before **KELLY**, **BALDOCK**, and **MURPHY**, Circuit Judges.

 Defendant-Appellant Lamar Morgan entered a conditional plea of guilty to one count of knowingly possessing with intent to distribute 50 grams or more of a substance containing a detectable amount of cocaine base, 21 U.S.C. § 841(a)(1) and 21 U.S.C. § 841(b)(1)(A)(iii). Fed. R. Crim. P. 11(a)(2). He was sentenced to 154 months imprisonment followed by five years supervised release. Our jurisdiction arises under 28 U.S.C. § 1291 and we affirm the district court's denial of his motion to suppress.

---

[*]After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. See Fed. R. App. P. 34(a); 10th Cir. R. 34.1(G). The case therefore is ordered submitted without oral argument.

## Background

When reviewing a district court's denial of a motion to suppress, we accept the district court's factual findings unless clearly erroneous, and we view the evidence in the light most favorable to those findings. United States v. Caro, 248 F.3d 1240, 1243 (10th Cir. 2001). Viewed accordingly, the record reveals the following.

On December 6, 2003, at approximately 2:00 p.m., Officers Eric Jones and Charles Stites of the Kansas City, Kansas, Police Department went to North 82nd Street in Kansas City, Kansas to conduct a warrant sweep. The officers had a list of names and addresses of persons with outstanding warrants, including that of Curtis Morgan ("Curtis"), the brother of Defendant-Appellant, Mr. Lamar Morgan. The officers went to 2805 North 82nd Street looking for Curtis, who had an outstanding probation violation warrant.

Upon approaching the front door of the bi-level, duplex residence, Officer Jones opened the screen door and knocked on the interior wooden door. When Mr. Morgan opened the interior door, the officer immediately smelled a very strong odor of burned marijuana. The officer asked Mr. Morgan his name and Mr. Morgan told him. When the officers asked if Curtis was present, Mr. Morgan replied, "no, he's in jail." The officer asked for Mr. Morgan's identification and told him that he smelled burned marijuana. In response to the officer's question

of whether anyone in the house was smoking marijuana, Mr. Morgan replied that he had been previously, but he had put it out in an ashtray on the upper level. The officer then requested permission to enter the house and speak with Mr. Morgan, whereupon Mr. Morgan acceded to his request.

Once inside the home, Officer Jones asked Mr. Morgan if he could search his person for any weapons or contraband, to which Mr. Morgan replied that he could. As he patted Mr. Morgan down, the officer felt something "unusual"–not contraband–but something like "folded up bills." The officer reached into Mr. Morgan's pockets and pulled the bills out "just to see that there was a very large amount." He then put the money back. The officer then asked Mr. Morgan to have a seat and informed him that he was going to apply for a search warrant for the residence. Mr. Morgan then appeared to be starting up the stairs of the split level home, whereupon Officer Jones grabbed him and put him in handcuffs.

Once Mr. Morgan was handcuffed, Officer Jones did a "protective sweep" of the residence. Hearing voices on the lower level, he checked there and found Mr. Morgan's fourteen year old brother-in-law and the boy's three year old niece. He heard nothing from the upper level, but proceeded to check it. Though there were no other people found in the residence, the officer saw a couple of suspected partially smoked marijuana cigarettes and a baggie of marijuana on the upper level kitchen table. The baggie subsequently weighed in at 9.2 grams.

Officer Jones waited approximately 15 to 30 minutes for other officers to arrive before going to the narcotics unit office to prepare an affidavit in support of a search warrant. While he was at the police station preparing the affidavit, another officer called with information he received from "some neighbors who wanted to remain anonymous" that there was a large amount of traffic going at the subject residence. The neighbors believed narcotics were being sold from that residence and another nearby. This information was placed in the affidavit along with the following sworn information: (1) Officer Jones smelled a strong odor of burned marijuana coming from inside the residence, (2) Mr. Morgan stated that he had been smoking marijuana and had just put it out in an ashtray, (3) Mr. Morgan gave consent for the officers to come into the residence and to search his person for weapons or contraband at which time Officer Jones discovered his pants pockets were "full of money," and (4) Officer Jones had observed a "baggie of marijuana" and a couple of suspected burned marijuana cigarettes on the upper level kitchen table. The warrant was issued.

Upon Officer Jones' return to the residence with the warrant, police recovered 74.6 grams of crack cocaine from a dresser drawer in the master bedroom and 42 grams of crack cocaine from a kitchen drawer. Police also found scales, 9.2 grams of marijuana, over $4,000 in US currency, and two firearms. After performing the search, the officer read Mr. Morgan his Miranda rights and

- 4 -

obtained his waiver thereof. At that time, Mr. Morgan admitted to possessing the crack cocaine and firearms, but denied distributing the crack cocaine.

Mr. Morgan filed a pretrial motion to suppress the evidence seized during the search of his home and the statements he made shortly thereafter. After an evidentiary hearing, the district court denied Mr. Morgan's motion, finding that (1) the officers' entrance onto Mr. Morgan's property and their knock at his door was lawful, (2) when Mr. Morgan opened the door, the officers had probable cause to believe that a crime had been committed based on the fact that the officers smelled burned marijuana and Mr. Morgan admitted that he had just smoked marijuana, (3) Mr. Morgan consented to the search of his person, (4) the protective sweep was justified by exigent circumstances, and (5) the information set forth in the affidavit provided probable cause for the search warrant to issue. Mr. Morgan filed a second suppression motion, citing additional legal authority in support of the issues raised in the previous motion. Relying on the factual findings made in the prior suppression hearing, the district court denied the second motion.

## Discussion

On appeal, Mr. Morgan argues that the district court erred in denying his motion to suppress because (1) the search of his person exceeded the limited

scope of his consent, and (2) the protective sweep of the upper level of his home was unjustified. He further contends that there was insufficient probable cause for a search warrant to issue when the following information is excised from the affidavit: (1) the money found during the search of his person, (2) the marijuana recovered during the protective sweep, and (3) the uncorroborated information provided by the anonymous neighbors. He in turn argues that all evidence seized pursuant to the improperly issued search warrant and the admissions he made should have been suppressed as "fruits of the poisonous tree."

We need not address whether the search of Mr. Morgan's person exceeded the scope of his consent or if the protective sweep was justified. We hold that, even without the contested information, the affidavit in support of the warrant established sufficient probable cause to issue the warrant and the warrant provided an adequate basis for the search and seizure of the evidence in question. As such, having determined that the search of Mr. Morgan's residence was not unconstitutional, his "fruit of the poisonous tree" argument is unavailing. There was no poisonous tree.

While we review the district court's factual determinations for clear error, our review of an ultimate Fourth Amendment question is de novo. See United States v. Souza, 223 F.3d 1197, 1201 (10th Cir. 2000). The existence of probable cause is a "common-sense standard." United States v. Wicks, 995 F.2d 964, 972

(10th Cir. 1993) (citations omitted). An affidavit establishes probable cause for a search warrant to issue if the totality of the information contained therein establishes a fair probability that contraband or evidence of a crime will be found in a particular place. See Illinois v. Gates, 462 U.S. 213, 238-39 (1983) (noting this is a flexible standard). An affidavit containing erroneous or unconstitutionally obtained information invalidates a warrant if that information was crucial to establishing probable cause. United States v. Karo, 468 U.S. 705, 719 (1984). If, however, the affidavit contained sufficient accurate or untainted information, the warrant is nevertheless valid. Id.

In the instant case, even absent the contested information, the affidavit in support of the warrant contained sufficient information to establish probable cause. The affidavit contained statements by Officer Jones that he smelled burned marijuana coming from inside the residence and recounted Mr. Morgan's admissions that he had been smoking marijuana and had put it out in an ashtray just minutes prior. These facts certainly establish a fair probability that contraband—marijuana—was present inside the residence.

Drawing on this court's precedents in the area of warrantless vehicle searches, Mr. Morgan contends that the smell of burned marijuana, standing alone, is insufficient to establish probable cause to search a residence. See, e.g, United States v. Nielsen, 9 F.3d 1487, 1491 (10th Cir. 1993) (holding that the

odor of burned marijuana in the passenger compartment of a vehicle does not, standing alone, establish probable cause to search the trunk; rather, an officer obtains probable cause to search the trunk of a vehicle once he smells burned marijuana in the passenger compartment and finds corroborating evidence of contraband). Authority contrary to Mr. Morgan's position is not hard to find. See, e.g., Johnson v. United States, 333 U.S. 10, 13 (1948) (recognizing that the odor of a burning controlled substance "might very well be found to be evidence of most persuasive character" in finding probable cause to issue a search warrant); United States v. Cephas, 254 F.3d 488, 495 (4th Cir. 2001) (suggesting that the odor of burning marijuana emanating from inside an apartment alone would almost certainly have given an officer probable cause to believe contraband—marijuana—was present in an apartment); Gompf v. State, 120 P.3d 980, 986 (Wyo. 2005) (explaining that once officers smelled burned marijuana in the residence, they had probable cause to justify issuance of the search warrant); State v. Hughes, 607 N.W.2d 621, 627 (Wis. 2000) ("When the strong smell of marijuana is in the air, there is a 'fair probability' that marijuana is present. This is common sense."); State v. Beeken, 7 Neb. App. 438, 448-49 (1998) (holding that the strong odor of burning marijuana coming from a within a residence provided sufficient probable cause to issue a search warrant); State v. Decker, 580 P.2d 333, 335-36 (Ariz. 1978) (noting that even if the smell of burned marijuana

has a lingering effect, as was urged, the court felt that a man of reasonable prudence, upon  smelling the odor, would believe that marijuana is probably present).  We need not decide, however, whether the smell of burned marijuana coming from a residence would, standing alone, establish sufficient probable cause for a search warrant.  Here, the smell was accompanied by Mr. Morgan's admission that he was smoking and had just extinguished it.  This provided sufficient probable cause for the warrant to issue.

     AFFIRMED.

                       Entered for the Court


                       Paul J. Kelly, Jr.
                       Circuit Judge